[Doc. No. 66]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

HOLLY DIEBLER, individually
and on behalf of all others
similarly situated,

                    Plaintiff,       Civil No. 19-20155 (NLH)(MJS)

     v.

SANMEDICA INTERNATIONAL, LLC,
et al.,

                    Defendants.

**O P I N I O N**

This case concerns a class action lawsuit brought on behalf of purchasers of SeroVital-hgh. Presently before the Court is Plaintiff's motion for leave to file first amended complaint. Doc. No. 66 (the "Motion"). The Motion is opposed. Doc. No. 70. The Court exercises its discretion to decide Plaintiff's motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed, Plaintiff's Motion is **GRANTED** in part and **DENIED** in part.

**Background**

Plaintiff, Holly Diebler ("Plaintiff"), filed this putative class action on November 13, 2019, challenging the advertising and efficacy of SeroVital-hgh ("SeroVital"), a purported Human Growth

1

Hormone ("HGH") supplement produced by Defendant, SanMedica International, LLC ("Defendant"). Doc. No. 1 ("Complaint"). The Complaint includes two counts: (1) Violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq.; and (2) Breach of Express Warranty, N.J.S.A. § 12A:2-313, et seq. Id. The class of affected consumers is defined in the Complaint as "[a]ll persons who purchased the Product [SeroVital] in the state of New Jersey for personal use and not for resale, during the time period of six years prior to the filing of the Complaint, through the present." Id. at ¶ 50. In September 2020, the Complaint survived a pre-answer motion to dismiss, save for Plaintiff's request seeking injunctive relief against Defendant. Doc. Nos. 29, 30.

The gravamen of Plaintiff's suit is that SeroVital, despite being marketed as a HGH supplement that can "make users look and feel decades — not years, but DECADES — younger," is "no more effective for its advertised purposes than a placebo, and is therefore worthless to New Jersey consumers . . . " Compl. at ¶¶ 1-5, 19. Plaintiff alleges that the scientific community has confirmed that: "(1) the Product cannot increase HGH levels whatsoever, let alone by 682%; (2) the Product does not reduce wrinkles, 'decrease[] body fat,' 'increase[] lean muscle mass,' strengthen bones, 'improve[] mood,' 'heighten[ ] sex drive,' or make 'users look and feel. . . decades younger' because the oral administration of amino acids like SeroVital does not increase

2

growth hormone bioactivity; (3) there is no causal link between increased HGH levels and most of the claimed uses, including wrinkle reduction, increased lean muscle mass, stronger bones, improved mood, [or] heightened sex drive; and (4) if SeroVital were to increase HGH levels as claimed, it would cause significant health risks." Id. at ¶ 2.

Plaintiff now moves to amend the Complaint to add parties and a cause of action alleging a fraudulent enterprise is behind SeroVital and other supposedly identical products. Specifically, Plaintiff seeks to (1) add an additional cause of action for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a), (c)-(d), and related allegations (the "Proposed RICO Claim"); (2) add proposed defendants Basic Research Holdings, LLC, Basic Research Intermediate, LLC, and BR Cos, LLC (the holding companies for the Basic Research Enterprise that at different times wholly owned the following subsidiaries), Basic Research, LLC (the sales and distribution department for the alleged enterprise's products), Sierra Research Group, LLC (the research and development department for the alleged enterprise), CRM Specialists, LLC (the customer service and direct to customer sales department for the alleged enterprise), Limitless Worldwide, LLC (the alleged nominal manufacturer of alleged identical products SeroDyne and Thrive), Novex Biotech, LLC (the alleged nominal manufacturer for alleged identical product GF-9), and

Bydex Management, LLC (the human resources department and alleged nominal employer of the individuals who work for the purported enterprise), and Bodee Gay, Gina Daines, Haley Blackett, Kimm Humphries, and Mitchell K. Friedlander (who owned, have been executive officers, and/or have directly participated in and/or controlled the research and development, manufacturing, marketing and advertising, and sale of the Products for the alleged fraudulent enterprise) (collectively the "Proposed Defendants")[1]; (3) add SeroDyne, Thrive and GF-9 as substantially similar, if not identical, products to SeroVital; (4) add Edward and Diane Lenhart as plaintiffs (collectively, "Proposed Plaintiffs"); (5) assert alter ego claims under Count Two alleging Violation of New Jersey Consumers Fraud Act, N.J.S.A. § 56:8-1, et seq., and Count Three alleging Breach of Express Warranty N.J.S.A. § 12A:2-313, et seq.; and (6) add a claim for treble damages under the New Jersey Consumer Fraud Act, codified at N.J. Stat. Ann. 56:8-19 ("Proposed Treble Damages Claim") (collectively, the "Proposed Amendments"). Doc. No. 66-10 ("Proposed Amended Complaint"); Br. in Supp. at *4-

---

[1] The Court further notes that Majestic Media, LLC, identified by Plaintiff as the entity responsible for marketing and advertising the products, is listed in the Proposed Amended Complaint as a defendant, as well as in the case caption to that proposed filing. Doc. No. 66-10 ("Proposed Amended Complaint") at ¶ 23(f). While not specifically identified as a newly proposed defendant in Plaintiff's brief, the Court relies on the Proposed Amended Complaint and will consider this entity as a Proposed Defendant for purposes of this Motion.

5 [Doc. No. 66-1]. Like the claims brought in the original Complaint, the Proposed Amendments focus on the alleged research, marketing, and sales activities of the Proposed Defendants. According to Plaintiff, the Proposed Defendants comprise a complex corporate structure engaged in a scheme to defraud consumers by manufacturing, marketing, and selling the same product rebranded as different products using the same self-funded study to substantiate false and misleading claims. See Proposed Amended Compl. ¶¶ 1-9. Specifically, Plaintiff seeks to allege that the enterprise manufactures, markets, and sells identical products SeroDyne, Thrive, and GF-9 with the same formula and same purported substantiating science as SeroVital derived from affiliate Sierra Research, LLC, using different nominal manufacturers to create a perception of independence and legitimacy for the products in what amounts to a pattern of racketeering activity. Id. Plaintiff claims that Defendant and Proposed Defendants engaged in acts of mail fraud and wire fraud to effectuate the scheme. Id. ¶¶ 163-172

Plaintiff represents that most of the key facts underlying the Proposed Amendments in the instant Motion were revealed during Defendant's Rule 30(b)(6) depositions taken in a related matter, Pizana v. SanMedica International LLC, No. 1:18-cv-00644-DAD-SKO (E.D. Cal., filed May 9, 2018), in September and November 2020. Bruce Decl. ¶ 3 [Doc. No. 66-2]; Br. in Supp. at *6-7. These alleged facts, many of which Plaintiff claims were solely in

Defendant's possession, include information regarding alleged interrelationships between the various Proposed Defendants and Defendant and their involvement in a single enterprise to manufacture, market, and sell the same amino acid formula under different brand names based on the same purported science. Id.

As addressed further herein, Defendant opposes this Motion. Defendant points to Plaintiff's alleged undue delay and maintains that the Plaintiff has been in possession of the facts that form the basis of this Motion for several years. Price Decl. ¶¶ 3-11 [Doc. No. 70-1]. Defendant further argues that the Proposed Amendments would be futile and that amendment of the Complaint would prejudice Defendant. Br. in Opp. at 13-21.

**Discussion**

A party may amend its pleading once as a matter of right within either (1) twenty-one days of serving it; or (2) where the pleading is one to which a responsive pleading is required, the earlier of twenty-one days following service of the responsive pleading or service of a motion to dismiss under Rule 12(b), (e), or (f) of the Federal Rules of Civil Procedure. FED. R. CIV. P. 15(a)(1). Once those deadlines have expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). Here, Plaintiff filed the Motion within the time period prescribed by this Court's Order

setting the deadline for motions to amend the pleadings at March 1, 2021. See Doc. No. 37.[2]

"Federal Rule of Civil Procedure 15(a)(2) provides a liberal standard for motions to amend: 'The court should freely give leave when justice so requires.'" Spartan Concrete Prod., LLC v. Argos USVI, Corp., 929 F.3d 107, 115 (3d Cir. 2019) (quoting FED. R. CIV. P. 15(a)(2)). Notwithstanding this liberal standard, denial of leave to amend can be based on undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, prejudice to the opposing party, or futility.[3] Mullin v. Balicki, 875 F.3d 140, 149 (3d Cir. 2017) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Under Rule 15, the decision to amend rests within the discretion of the Court. Id. at 150; Heyl & Paterson Int'l Inc. v. F.D. Rich Hous. of Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981).

## I. Delay

"While simple delay cannot justify denying leave to amend by itself, delay that is 'undue' — a delay that is protracted and unjustified — can place a burden on the court or counterparty, or

---

[2] The Court's October 21, 2020 Order contains a typographical error and it is apparent that the deadline was intended to be set at March 1, 2021. Neither party challenges this.

[3] The present Motion represents Plaintiff's first attempt to amend the Complaint. Therefore, a potential failure to cure deficiencies of amendments previously allowed is not implicated here.

can indicate a lack of diligence sufficient to justify a discretionary denial of leave." Mullin, 875 F.3d at 151; see also High 5 Games, LLC v. Marks, No. CV 13-7161, 2018 WL 2134038, at *3 (D.N.J. May 9, 2018) (citing Marlowe Patent Holdings v. Dice Electronics, LLC, 293 F.R.D. 688, 695 (D.N.J.2013)) ("Delay is only undue when it places a burden on the Court or causes prejudice to the non-moving party."). There is no presumptive period in which delay becomes undue. Mullin, 875 F.3d at 151. An assessment of undue delay requires courts to "focus on the movant's reasons for not amending sooner" while "bearing in mind the liberal pleading philosophy of the federal rules." Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (internal citations omitted). Moreover, the time between when a party discovers information giving rise to a proposed amendment and the filing of their motion is an "important factor" when determining whether there is undue delay. Gratz College v. Synergis Education Inc., No. 14-6966, 2015 WL 9474654, at *2 (E.D. Pa. Dec. 29, 2015). Important here, "[p]ursuant to their discretion under Rule 15, courts generally grant leave to amend where, during the course of discovery, a party discovers 'new evidence.'" Sabatino v. Union Twp., No. CIV.A. 11-1656, 2013 WL 1622306, at *6 (D.N.J. Apr. 15, 2013) (citing Kronfeld v. First Jersey Nat'l Bank, 638 F.Supp. 1454, 1460 (D.N.J. June 20, 1986) (granting motion to amend upon discovery of new evidence where it did "not appear that the

8

amendment would cause undue delay or that plaintiffs have a dilatory motive.")).

Plaintiff submits that the present Motion is not the result of undue delay as it was brought as soon as reasonably practicable and within the time allotted under the operative scheduling order. Br. in Supp. at *17 [Doc. No. 66-1]. Specifically, Plaintiff avers that most of the key facts underlying the Proposed Amendments in the instant Motion were only learned during Rule 30(b)(6) depositions taken in the related _Pizana_ matter in September and November 2020. Bruce Decl. ¶ 3. According to Plaintiff, these facts could not have been uncovered sooner where the alleged enterprise has intentionally obscured its true nature and corporate structure and "[i]t took several depositions . . . to uncover Basic Research's confusing web." Br. in Reply at *1 [Doc. No. 74]. Plaintiff further submits that following the depositions, Plaintiff conducted a review of Defendant's sizable document production made on January 15, 2021 to determine whether this discovery somehow vitiated the grounds to amend the complaint in this action. Br. in Supp. at *16-17. Thereafter, Plaintiff filed the Motion on March 1, 2021 during the nascent stages of discovery and within the deadline prescribed by the Court for filing motions to amend the pleadings. _Id._

Defendant, by contrast, contends that Plaintiff's Motion should be denied because Plaintiff's counsel has known for years

about the facts and parties included in the Proposed Amendments based on their participation in Martin v. SanMedica International, LLC, Case No. 2:16-cv-07794 and Miller v. Basic Research, Case No. 2:07-CV-871 TS (D. Utah, filed Nov. 9, 2007), their awareness of decisions in Kwan v. SanMedica International, No. 15-15496 and Engel v. Novex Biotech, LLC, No. 15-15492, and their knowledge of patent numbers. Br. in Opp. at *10-12. Specifically, Defendant argues Plaintiff's counsel knew of Sierra, Novex, and GF-9 because they represented plaintiffs in the Martin case against SanMedica and filed briefing in that matter citing extensively to decisions in Kwan and Engel, both of which involved Sierra Research, LLC as a named defendant. Id. at *11. Defendant further claims that Plaintiff's counsel filed briefing in Martin discussing the Novex GF-9 product and the congruent 682% HGH claim SanMedica makes to promote SeroVital. Id. Additionally, during the course of the Martin lawsuit, SanMedica supposedly submitted a declaration of Bodee Gay wherein Mr. Gay testified that he is the CEO of SanMedica. Id. at *2. According to Defendant, Plaintiff's counsel and his law firm also knew about Proposed Defendants Gina Daines, Mitchell Friedlander, Basic Research, LLC and Bydex Management, LLC over a decade ago when they filed actions in Miller against, inter alia, Mr. Friedlander, Basic Research and Bydex Management. Id. at *12. Finally, Defendant claims that Plaintiff knew or should have known of the involvement of Mitchell Friedlander based on the

10

disclosure of his name in an interrogatory in Pizana and his association with patent numbers printed on SeroVital packaging. Id. at *10-11.

On the record before it, the Court cannot find that Plaintiff was previously aware, or should have been aware, of facts sufficient to formulate and support the Proposed Amendments prior to the depositions in Pizana. First, Defendant has not shown how the prior identification of Mitchell Friedlander would have revealed the extent of his alleged involvement in the purported enterprise such that Plaintiff should have brought these allegations earlier. Second, the Court is unable to impute knowledge to Plaintiff regarding the Proposed Defendants' alleged role in the enterprise based on Miller. Miller concerned a weight loss supplement entirely distinct from the products at issue here. In fact, the complaint in Miller was filed in 2007 before SanMedica or SeroVital even came into existence. Third, counsel for Plaintiff's involvement in Martin and purported familiarity with Kwan and Engel likewise does not suggest Plaintiff unduly delayed seeking amendment. Kwan and Engel concerned the GF-9 product sold by Novex and involved Sierra as a named defendant. Even assuming counsel for Plaintiff was familiar with Kwan and Engel and that it referenced Novex's GF-9 product and related HGH claim in the Martin matter, it is impossible to say that any of these segregated pieces of information, alone or together, could form the basis of

11

Plaintiff's Proposed RICO Claim or alter ego allegations. At the essence of Plaintiff's Proposed Amendments is the theory that Basic Research and related entities and individuals acted in concert to research, market, and sell four products comprised of the *same formulation* (SeroVital, Thrive, GF-9, and SeroDyne). Importantly, however, no evidence has been presented at this time from which the Court could reasonably infer that Plaintiff possessed certain key facts – namely, that the four Products are comprised of the same formulation – prior to the depositions of Amy Heaton and Brokk Mowrey. At bottom, while counsel for Plaintiff may have possessed prior knowledge of the existence of certain individuals, entities, and products in question, it is not apparent that Plaintiff would have necessarily been aware of the interrelationship between Defendant and Proposed Defendants and the extent of their activities alleged to form the constituent elements of an enterprise under RICO or to show alter ego liability. Consequently, without making inferential leaps or resorting to unjustified speculation, the Court cannot find that Plaintiff should have brought the Proposed Amendments earlier. This is particularly so when Plaintiff filed this application consistent with the Court's Scheduling Order.

## II.  Bad Faith or Dilatory Motive

Defendant does not assert that Plaintiff acted with bad faith or dilatory motive in bringing the Motion, and the Court does not otherwise find facts in the record leading to such a conclusion.

### III. Prejudice

"[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." Lorenz v. CSX Corp., 1 F.3d 1406,1414 (3d Cir. 1993). When evaluating prejudice to the non-moving party in the context of a motion to amend, courts in the Third Circuit consider whether amendment would impair the non-moving party's "ability to present its case." Dente v. Saxon Mortg., Civ. A. No. 11-6933, 2012 WL 1664127, at *2 (D.N.J. May 11, 2012) (citing Heyl, 663 F.2d at 426). Specifically, courts evaluate "whether the amendment would force the opponent to expend significant additional resources to conduct discovery and prepare for trial, as well as whether it would significantly delay resolution of the action." Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp., No. CV155477, 2017 WL 4404567, at *3 (D.N.J. Oct. 4, 2017) (citing Cureton, 252 F.3d at 273). Incidental prejudice is insufficient grounds on which to deny leave to amend. See In re Caterpillar, Inc., 67 F.Supp.3d 663, 668 (D.N.J. 2014).

Defendant contends that permitting amendment would result in undue prejudice. In support of this position, Defendant posits that both the number of additional proposed parties and the breadth

of Plaintiff's new theory of liability in the RICO claim would require costly and protracted discovery. Br. in Opp. at *19-20.

The Court is not persuaded that permitting amendment at this stage would significantly delay the resolution of this matter or deny Defendant the opportunity to present facts or evidence to defend against Plaintiff's claims. Plaintiff's request comes within the period prescribed by the Court's Scheduling Order to bring motions to amend, and it is difficult to see prejudice at this juncture where discovery is just getting underway, no depositions have been taken in this matter, no trial date has been set, and no dispositive motions have been filed after Defendant's motion to dismiss in lieu of an answer. While the Proposed Amendments would assuredly prompt additional discovery, "the expenditure of time, money, and effort alone is not grounds for a finding of prejudice." Bylin v. Billings, 568 F.3d 1224, 1230 (10th Cir. 2009) (citing Block v. First Blood Assocs., 988 F.2d 344, 351 (2d Cir. 1993); see also United States v. Continental Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989) ("the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading."); Schoolcraft v. City of New York, 81 F. Supp. 3d 295, 299 (S.D.N.Y. 2015) ("Nor is 'undue prejudice' established by allegations that an amendment will require the expenditure of additional time, effort, or money."). Here, where the Proposed Amendments are

predicated on alleged facts that related entities and individuals acted in concert to research, market, and sell four products comprised of the same formulation and based on the same substantiating research, whatever additional costs Defendant may incur are likely to be limited, at least in some measure, by common questions that predominate over Plaintiff's claims. Additionally, this Court's Order permitting discovery from the <u>Pizana</u> matter to be used in this litigation should serve to facilitate a more streamlined discovery process. Furthermore, the fact that each of the subsidiary companies operate out of the same principal place of business at 5742 Harold Gatty Drive in Salt Lake City suggests that additional discovery may be conducted with relative efficiency. <u>See</u> Br. in Supp. at *13. The Court also notes that in view of the information uncovered in the <u>Pizana</u> depositions, it is possible that Plaintiff will engage in discovery pertaining to the various individuals and entities identified in the Proposed Amended Complaint regardless of the outcome of this Motion. While the Court acknowledges that this case will become larger and more complex as a result of amendment, it is not persuaded that the same is a sufficient basis to find that undue prejudice would inure to Defendant. Accordingly, the Court finds that any prejudice to Defendant caused by the necessity of additional discovery is overcome by countervailing factors weighing in favor of granting leave.

### III. Futility

Futility means the complaint, as amended, would fail to state a claim upon which relief could be granted. <u>Shane v. Fauver</u>, 213 F.3d 113, 115 (3d Cir. 2000). To be futile, the proposed amendment must be "frivolous or advance a claim or defense that is legally insufficient on its face . . . " <u>Marlowe Patent Holdings</u>, 293 F.R.D. at 695 (internal quotations omitted). In determining whether a claim is futile, district courts apply the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6).[4] <u>Shane</u>, 213 F.3d at 115; <u>Travelers Indemnity Co. v. Dammann & Co., Inc.</u>, 594 F.3d 238, 243 (3d Cir. 2010). The Court must accept as true all well-pleaded factual allegations raised in a plaintiff's proposed amended pleading and must determine whether the facts, as alleged, support a facially plausible claim on the grounds asserted. <u>See Warren Gen. Hosp. v. Amgen Inc.</u>, 643 F.3d 77, 84 (3d Cir. 2011). "If a proposed amendment is not clearly futile, then denial of leave to amend is improper." <u>Harrison Beverage Co. v. Dribeck Importers, Inc.</u>, 133 F.R.D. 463, 468 (D.N.J. 1990). Given the liberal standard for amendment of pleadings, "courts place a heavy burden on opponents

---

[4] Although tracking Rule 12(b)(6), Rule 15 futility does not contemplate substantive motion practice on the merits of the new claims. <u>Harrison Beverage Co. v. Dribeck Importers, Inc.</u>, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotations and citations omitted).

who wish to declare a proposed amendment futile." <u>Pharmaceutical</u>
<u>Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.</u>, 106 F.
Supp. 2d 761, 764 (D.N.J. 2000).

Defendant argues that the Proposed Amendments are futile for
the following reasons: (1) the Proposed Amended Complaint does not
adequately assert personal jurisdiction over the Proposed
Defendants; (2) the Proposed Plaintiffs lack standing to sue
Limitless Worldwide, LLC and its corporate parents; (3) the
Proposed Amended Complaint does not plausibly plead alter ego
claims; and, (4) the Proposed Amended Complaint does not plausibly
plead RICO claims.[5] Each will be addressed, <u>in</u> <u>seriatim</u>.

**a. Personal Jurisdiction**

In Defendant's first futility argument, it contends that the
Proposed Amended Complaint fails to set forth facts to establish
personal jurisdiction over any of the Proposed Defendants. More
specifically, Defendant maintains there are no allegations that
any of the individual Proposed Defendants reside in New Jersey or
that they would be subject to personal jurisdiction in this Court,
and there are no allegations that any of the proposed corporate
defendants (with the exception of Novex and Limitless) sold product

---

[5] Defendant does not specifically challenge Plaintiff's proposal
to add allegations concerning treble damages under the New Jersey
Consumer Fraud Act as futile. Nevertheless, the Court has
considered the proposed allegations in view of N.J. Stat. Ann. §
56:8-19 and sees no reason to foreclose Plaintiff's pursuit of
this form of relief at the present stage.

to anyone in New Jersey. The Court finds Plaintiff's Proposed Amended Complaint is not clearly futile for lack of personal jurisdiction.

First, the Court questions the soundness of current Defendant's standing to pursue this argument. Defendant's Response in Opposition is submitted only on behalf of Defendant SanMedica International, LLC. Counsel does not purport to represent the interests of the Proposed Defendants. In Synthes, Inc. v. Marotta, 281 F.R.D. 217 (E.D.Pa. 2012), the Court declined to consider a similar argument challenging the Court's personal jurisdiction over proposed defendants:

> [U]nlike subject matter jurisdiction, personal jurisdiction represents a restriction on judicial power as a matter of individual liberty. As such, this right is waivable, reflecting the principle that the individual can subject himself to powers from which he may otherwise be protected. Given the individual nature of this right, many courts have found that a defendant lacks standing to raise absence of personal jurisdiction on behalf of proposed co-defendants. Because Proposed Defendants Stassen, Powell, and Brown have not yet appeared and have not yet indicated whether they wish to challenge jurisdiction, the Court is reluctant to allow Current Defendants Marotta and Emerge to do so on their behalf.

Synthes, Inc., 281 F.R.D. at 229–30 (internal quotations and citations omitted). The same concerns identified in Synthes are attendant here.[6]

---

[6] See, e.g., SmithKline Beecham v. Geneva Pharms., 287 F.Supp.2d 576, 580 n. 7 (E.D.Pa.2002) (finding, in context of deciding motion for leave to amend, that party defendant lacked standing to contest

Second, the Court recognizes the general reluctance in the Third Circuit to rule on personal jurisdiction questions in the context of a motion for leave to amend a complaint. See In re: L'Oreal Wrinkle Cream Mktg. Pracs. Litig., No. 2415, 2015 WL 5770202, at *5 (D.N.J. Sept. 30, 2015) (citing Synthes, Inc., 281 F.R.D. at 230). "This is because the parties' arguments at this stage typically rest on sparse factual records that leave courts with insufficient evidentiary bases on which to conclusively rule on the issue." MacQueen v. Union Carbide Corp., No. CV 13-831, 2014 WL 1338729, at *3 (D.Del. Apr. 1, 2014). Accordingly, "[w]here a court could 'conceivably have personal jurisdiction' over a defendant sought to be added via an amended complaint, the court should not, despite objection by existing parties, deny leave to amend based on futility challenges. Synthes, Inc., 281 F.R.D. at 230 (quoting Pegasus Int'l, Inc. v. Crescent Mfg. Co., No. CIV.A. 06-2943, 2007 WL 1030457, at *7 (E.D. Pa. Apr. 2, 2007)).[7]

_____

personal jurisdiction on proposed defendant's behalf); Jenkins v. Smead Mfg. Co., No. Civ.A.09-261, 2009 WL 3628100, at *3 (S.D.Cal. Oct. 28, 2009) (finding that defendants could not, in opposition to a motion for leave to amend, raise lack of personal jurisdiction or venue on behalf of the proposed defendants); Sayles v. Pac. Eng'rs & Constructors, Ltd., No. Civ.A.08-676, 2009 WL 791332, at *6 (W.D.N.Y. Mar. 23, 2009) (holding that the court may consider personal jurisdiction only where the affected defendant challenges the assertion of personal jurisdiction over it).

[7] See also Bernheim v. Est. Of Bedrick, No. CIV.A. 07-2195, 2007 WL 2900377, at *7 n.9 (D.N.J. Oct. 1, 2007) (noting that "under federal law it would not be proper to deny a motion for leave to amend based solely on an alleged lack of personal jurisdiction");

Third, even if Defendant's argument were to be tested on the merits, the Court would not find futility at this stage as Plaintiff has asserted facts to "conceivably" establish personal jurisdiction. See Curry v. Bram Auto Grp., LLC, No. 220CV12090, 2021 WL 912898, at *6 (D.N.J. Mar. 10, 2021); Pegasus Int'l, Inc., 2007 WL 1030457 at *7. The exercise of specific jurisdiction is permissible where: (1) the defendant purposely directed his activities at the forum state; (2) the plaintiff's claim arises out of and relates to at least one of those specific activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. Isaacs v. Arizona Bd. of Regents, 608 F. App'x 70, 74 (3d Cir. 2015). Here, the Proposed Amended Complaint alleges Proposed Plaintiffs are residents of New Jersey, and that they purchased either SeroVital or GF-9, or both, as a result of

---

Mylan Pharms., Inc. v. Kremers Urb. Dev., No. CIV. A. 02-1628, 2003 WL 22711586, at *4 (D. Del. Nov. 14, 2003) (declining to deny leave to amend based on challenge to personal jurisdiction because "[t]here is no requirement that a plaintiff allege the facts that support a finding of personal jurisdiction in a complaint" and "the parties have not yet developed a record on the possible contacts [proposed defendants] may or may not have in the [forum state]"); Wolfson v. Lewis, 168 F.R.D. 530, 534 (E.D.Pa. 1996) (holding that the court would not rule on whether it lacked personal jurisdiction over the additional defendants because there was insufficient evidence and the issue should be presented in a motion to dismiss); Hershey Pasta Grp. v. Vitelli-Elvea Co., No. Civ. A. 95-231, 1995 WL 862016, at *4 (M.D.Pa. June 27, 1995) (concluding that "[b]ecause the court conceivably could have personal jurisdiction over [proposed defendants], the court cannot find that joining these two parties would be an exercise in futility.").

Proposed Defendants' activities directed at the state. Proposed
Amended Compl ¶¶ 17-22. The Court can therefore readily discern
that personal jurisdiction over the entities and individuals
involved in research, marketing, sales, distribution, customer
services, and human resources services for SeroVital and GF-9 is,
at least, "conceivable." While neither Plaintiff nor Proposed
Plaintiffs are alleged to have purchased SeroDyne or Thrive, the
Court is nevertheless satisfied that sufficient factual content
has been pleaded for the Motion to withstand a futility challenge
predicated on lack of personal jurisdiction respecting claims
brought against the nominal manufacturer of those products,
Limitless Worldwide, LLC, and its affiliated entities and
individuals. The Proposed Amended Complaint alleges that
parent/grandparent company, Basic Research, LLC, directly and
through its agents, has substantial contacts with and received
benefits and income from and through the State of New Jersey.
Proposed Amended Compl. ¶ 24. It further alleges that Defendant
and Proposed Defendants were engaged in a joint venture under Basic
Research, LLC, and acted both in concert and in the capacity of a
partnership under express or implied agreements to carry out a
single undertaking. Id. ¶ 25-29. In view of these pleadings, taken
in the full context of the Proposed Amended Complaint, the Court
finds Plaintiff has asserted adequate facts to plausibly show the
Court "conceivably could have personal jurisdiction" over the

Proposed Defendants. Pegasus Int'l, Inc., 2007 WL 1030457 at *7. Accordingly, amendment is not futile for lack of personal jurisdiction.

**b. Standing**

Defendant next argues that the Proposed Amended Complaint is futile because it does not name a single plaintiff with standing to sue Limitless Worldwide, LLC or its corporate parents. Br. in Opp. at *14. Particularly, Defendant contends that because neither Plaintiff nor the Proposed Plaintiffs ever purchased Thrive or SeroDyne, no injury has been pleaded to establish standing against the nominal manufacturer of those products, Limitless Worldwide, LLC, or its parents. Id.

There are three well-recognized elements of Article III standing: First, an "injury in fact," or an "invasion of a legally protected interest" that is "concrete and particularized." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Second, a "causal connection between the injury and the conduct complained of[.]" Id. And third, a likelihood "that the injury will be redressed by a favorable decision." Id. at 561, 112 S.Ct. 2130 (citation and internal quotation marks omitted). Defendant's standing argument centers on the injury-in-fact element.

"The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege some specific, identifiable trifle of injury." Blunt v.

Lower Merion Sch. Dist., 767 F.3d 247, 278 (3d Cir. 2014) (alterations and internal quotations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" Lujan, 504 U.S. at 561. "In addressing whether a plaintiff may assert claims in a putative class action regarding products the plaintiff did not personally purchase or use, courts in this District generally hold that 'the standing issue becomes ripe only in the context of a motion for class certification.'" Cannon v. Ashburn Corp., No. CV 16-1452, 2016 WL 7130913, at *4 (D.N.J. Dec. 7, 2016) (citing Burke v. Weight Watchers Int'l, Inc., 983 F. Supp. 2d 478, 482 (D.N.J. 2013). "Rather than evaluate standing at the motion to dismiss stage, these courts put off the inquiry until class certification, so long as three criteria are met." In re L'Oreal Wrinkle Cream Mktg. & Sales Practices Litig., 2013 WL 6450701 at *4. "First, the basis for each of the claims [must be] the same with respect to the products the class plaintiffs purchased and the products the class plaintiffs did not purchase. Second, the products must be closely related. And third, the Defendants must be the same." Id. (quoting Burke v. Weight Watchers Int'l, Inc., 983 F. Supp. 2d 478, 482 (D.N.J. 2013) (internal quotations and citations omitted). Courts in this District regularly follow this approach. See, e.g., In re Gerber Probiotic Sales Pracs. Litig., No. CIV.A. 12-835, 2014 WL 5092920, at *5 (D.N.J. Oct. 10, 2014); Neuss v.

Rubi Rose, LLC, No. CV162339, 2017 WL 2367056, at *6 (D.N.J. May 31, 2017); Stewart v. Smart Balance, Inc., No. CIV.A. 11-6174, 2012 WL 4168584, at *14-16 (D.N.J. June 26, 2012).

Following this same approach, the Court concludes that denying leave to amend for lack of standing would be premature and unwarranted. Although neither Plaintiff nor Proposed Plaintiffs are alleged to have purchased SeroDyne or Thrive, the three relevant considerations discussed, supra, are present here. For the purposes of the Motion, Plaintiff has sufficiently alleged that the basis of the claims are the same, the Products are closely related, and the Proposed Defendants are the same. Specifically, (1) the Proposed Amended Complaint alleges the same theories of liability against Defendant and Proposed Defendants; (2) the Products are alleged to be comprised of the same formulation, based on the same substantiating research and science, and advertised using the same representations; and, (3) Defendant and Proposed Defendants are alleged to be part and parcel to a single enterprise using the same employees, the same business assets, and operating out of the same office building in Salt Lake City. See Br. in Supp. at *12-13. Accordingly, the Court finds plaintiffs Motion does not fail for lack of standing.

### c. Alter Ego Claims

Plaintiff seeks leave to amend the Complaint to plead alter ego claims under Count Two alleging Violation of New Jersey

Consumers Fraud Act, N.J.S.A. § 56:8-1, et seq., and Count Three alleging Breach of Express Warranty N.J.S.A. § 12A:2-313. Defendant contests the Motion in this regard, arguing that the Proposed Amended Complaint does not set forth adequate facts to support these proposed claims. Br. in Opp. at *14-16.

Under the theory of alter ego liability, a plaintiff may pierce the corporate veil to impose liability on an individual or entity normally subject to the protections of the corporate form. See The Mall at IV Group Props., LLC v. Roberts, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005). Here, the Proposed Defendants consist of entities incorporated in Delaware and Utah and individuals residing in Utah. "In a case where state substantive law applies, we must apply the forum state's choice-of-law rules." Fagin v. Gilmartin, 432 F.3d 276, 282 (3d Cir. 2005). "This in turn requires application of the law of the state of incorporation in determining whether a claim for piercing the entity's corporate veil has been sufficiently stated." New Jersey Performing Arts Ctr. Corp. v. ZMAN Time Prods., Inc., No. 17CV2901, 2018 WL 814051, at *6 (D.N.J. Feb. 9, 2018), report and recommendation adopted sub nom. New Jersey Performing Arts Ctr. v. ZMAN TIME Prods., Inc., No. CV 17-2901, 2018 WL 1456619 (D.N.J. Mar. 22, 2018). "Under New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs." Fagin, 432 F.3d at 282 (3d Cir. 2005); N.J.S.A. 42:2C-57(a). Courts

25

within this district have also applied the law of "the state that has the most significant connection with the parties and the transaction." See, e.g., Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC, No. CIV.A. 09-6480, 2014 WL 7073088, at *3 (D.N.J. Dec. 15, 2014), aff'd sub nom. Mark IV Transportation & Logistics v. Lightning Logistics, Inc., 705 F. App'x 103 (3d Cir. 2017); Torus U.S. Servs., Inc. v. Hybrid Ins. Agency, LLC, No. CV 14-01630, 2015 WL 6445788, at *4 n. 9 (D.N.J. Oct. 22, 2015). Depending on the approach adopted, Plaintiff's alter ego claims may be governed under either Utah, Delaware, or New Jersey law. Because both parties appear to apply the laws of Utah in their respective briefs, as will the Court.[8]

Under Utah law, the elements of alter ego liability require "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow." Celtig, LLC v. Patey, No. 2:17-CV-01086, 2019 WL 4779285, at *5 (D. Utah Sept. 30, 2019) (citing Norman v. Murray First Thrift & Loan Co., 596 P.2d 1028, 1030 (Utah 1979)).

---

[8] The Court's analysis would be substantially the same under New Jersey and Delaware law. See Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 200 (App. Div. 2006); Marnavi S.p.A. v. Keehan, 900 F. Supp. 2d 377, 392 (D. Del. 2012).

Factors bearing on the unity of interest and ownership analysis include the following: "(1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; and (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders[.]" Id. at *5-6.

The Third Circuit has emphasized the Supreme Court's reaffirmation that FED. R. CIV. P. 8 only requires a short and plain statement of claims and their factual underpinnings. See Phillips v. County of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008). However, the "plausibility paradigm" for evaluating the sufficiency of complaints imposed by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) cautions that "factual allegations in the complaint must not be 'so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.'" Umland v. PLANCO Fin. Serv.'s, Inc., 542 F.3d 59, 64 (3d Cir.2008) (quoting Phillips, 515 F.3d at 232). Applied in the present context, this standard requires that to state a plausible alter ego claim, "[a] plaintiff must affirmatively plead both the factors for alter-ego liability and the factual underpinnings supporting those factors with respect to each individual defendant." Richmond v. Lumisol Elec. Ltd., No. CIV.A. 13-1944,

2014 WL 1405159, at *4 (D.N.J. Apr. 10, 2014) (citing Holzli v. DeLuca Enterprises, No. CIV. 11-06148, 2012 WL 983693, at *3 (D.N.J. Mar. 21, 2012); Wrist Worldwide Trading GMBH v. MV Auto Banner, No. CIV.A. 10-2326 PGS E, 2011 WL 1321794, at *5 (D.N.J. Mar. 30, 2011). Additionally, "[w]hen a cause of action seeks to pierce the corporate veil on the basis of fraud, it is subject to Fed. R. Civ. P. 9(b)['s]" heightened pleading standards. Bd. of Trustees of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164 n. 10 (3d Cir. 2002).

Under the Proposed Amended Complaint, paragraphs 188 and 194 each read:

> IN THE ALTERNATIVE: At all relevant times, each Defendant was the alter ego of each other Defendant. Accordingly, each Defendant is jointly and severally liable for the damages proximately caused by each other Defendant's wrongful conduct. There is a unity of interest and ownership between amongst Defendants. If each Defendant's separate legal existence were not disregarded for purposes of assessing liability for the wrongful conduct herein alleged it would result in an injustice. Defendants commingled funds and/or other assets; failed to segregate funds and/or assets; diverted funds and/or assets to unauthorized uses; treated each other Defendant's assets as their own; failed to obtain requisite authority before acting; held each other Defendant out as liable for the debts of the other Defendant; failed to maintain adequate and separate records; shared identical equitable and/or legal owners; exercised domination and control over each other Defendant; shared identical officers, directors, supervisors, and/or managers; were wholly owned by the same individual or group of individuals who share familial and/or marital ties; used the same office or business location, equipment, and/or computer network, among other things; employed the same employees and/or attorney; failed to adequately

capitalize the business and/or company; used the entity(ies) as mere shell(s), instrumentality(ies), and/or conduit(s) for a single venture, the business of an individual, or the business of another entity; concealed and misrepresented the identity of the responsible ownership, management, and/or financial interest; concealed personal or unauthorized business activities; disregarded legal formalities; failed to maintain arm's length relationships amongst each other Defendant; used each other Defendant to procure labor, services, goods, and/or monies of another; diverted assets to the detriment of creditors; manipulated assets and liabilities to concentrate assets in one or more Defendant(s) and liabilities in the other Defendant(s); contracted with another with the intent to avoid performance by use of the other Defendant as a shield against its(their) liability; used each other Defendant as a subterfuge of illegal transactions; and/or formed and/or used each other Defendant to transfer to it(them) or away from it(them) the existing liability.

Proposed Amended Compl. ¶¶ 188, 194.

Plaintiff proposes to assert alter ego claims against Defendant and all Proposed Defendants and appears to allege that, at all relevant times, each one was the alter ego of every other. Id. Paragraphs 188 and 194, standing alone, are largely bare-boned statements which attribute the conduct of Defendant and Proposed Defendants to one another in a collectivized and conclusory fashion while pleading a generic formula for veil piercing. With that said, the Court recognizes that the Proposed Amended Complaint contains more specific allegations in earlier paragraphs which might plausibly link the Proposed Defendants to certain applicable unity of interest and ownership factors. Specifically, Proposed Amended Compl. at ¶¶ 23-53 alleges common ownership and management of a

complex corporate structure designed to obscure marketing fraud by the individual Proposed Defendants, who are siblings operating out of the same business address and using the same assets. "Although common ownership and common management will not automatically give rise to common liability, courts will pierce the corporate veil to hold numerous closely held corporations and their owners liable where certain facts suggest that an agency or similar relationship exists between the entities." Delzotti v. Morris, No. CIV. 14-7223, 2015 WL 5306215, at *11 (D.N.J. Sept. 10, 2015). This is true, for instance, "when there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." Id. (quoting Stochastic Decisions, Inc. v. DiDomenico, 565 A.2d 1133, (N.J. Super. Ct. App. Div. 1989)).

These considerations notwithstanding, presenting alter ego allegations against *fifteen different defendants* by simply claiming that each Proposed Defendant is the alter ego of the other, in a case of this complexity, amounts to an indiscriminate approach that leaves the Court uncertain about the actual scope of the claim as proposed, and the specific scope of liability asserted (i.e. is Plaintiff alleging that every Proposed Defendant is the

alter ego of each other Proposed Defendant, or is the claim actually more specific and targeted, based on the structure of the corporate Proposed Defendants?) While the Court can certainly speculate, the Proposed Amended Complaint, as drafted, simply is not clear. <u>See</u>, <u>e.g.</u>, <u>Falat v. Cty. of Hunterdon</u>, No. CIV.A. 12-6804, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) ("It is not the Court's job to laboriously search the Complaint for factual assertions that could, in theory, be used to support one legal claim or another."). For these reasons, the Court finds Plaintiff's alter ego allegations, as drafted, to fall short of satisfying the required pleading standards.[9]

### d. RICO Claims

Plaintiff seeks leave to amend the Complaint to add an additional cause of action against Defendant and Proposed Defendants for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a), (c)-(d) and related allegations. 18 U.S.C. § 1962(a), (c)-(d).[10] Plaintiff proposes to

---

[9] Based on this finding, the Court is unable to further find, and does not opine on, whether the allegations contained in the Proposed Amended Complaint, as currently drafted, are sufficient to plausibly assert alter ego liability.

[10] 18 U.S.C. § 1962(a), (c)-(d) provide as follows:
(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such

allege an association-in-fact enterprise as defined in 18 U.S.C. § 1961(4).

To state a substantive civil RICO action a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Liberty Bell Bank v. Rogers, 726 F. App'x 147, 151 (3d Cir. 2018) (quoting Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)). A RICO enterprise exists only where (1) there is "an ongoing organization, formal or informal"; (2) "the various associates [of the enterprise] function as a continuing unit"; and (3) the enterprise exists "separate and apart from the pattern of activity in which it engages." United States v. Turkette, 452 U.S. 576, 583 (1981). A

---

income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.
(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

pattern of racketeering activity will exist only where there are at least two predicate acts of racketeering. See 18 U.S.C. § 1961(5); Sedima, 473 U.S. at 496 n.14.). The predicate acts of racketeering may include federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343. Hlista v. Safeguard Properties, LLC, 649 F. App'x 217, 221 (3d Cir. 2016).

Where a plaintiff asserts a federal RICO claim premised on mail and wire fraud, as here, the allegations of fraud must be pled with particularity pursuant to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). See, e.g., Hlista, 649 F. App'x 217, 221 (3d Cir. 2016). "The level of particularity required is sufficient details to put defendants on notice of the 'precise misconduct with which they are charged.'" In re Riddell Concussion Reduction Litigation, 77 F.Supp.3d 422, 433 (D.N.J. 2015) (quoting Seville Indus. Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir. 1984)). A plaintiff alleging fraud must support its allegations "with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC, 812 F.3d 294, 307 (3d Cir. 2016) (quoting In re Rockefeller Ctr. Props., Inc. Securities Litig., 311 F.3d 198, 217 (3d Cir.2002). However, the Third Circuit cautions that Rule 9(b) should not be applied so strictly as to

disregard the "general simplicity and flexibility contemplated by the [Federal Rules of Civil Procedure]."[11] <u>Craftmatic Sec. Litig. v. Kraftsow</u>, 890 F.2d 628, 645 (3rd Cir. 1989); <u>see</u> <u>also</u> <u>Emcore Corp. v. PricewaterhouseCoopers LLP</u>, 102 F. Supp. 2d 237, 249–50 (D.N.J. 2000). Courts have relaxed the particularity requirements of Rule 9(b) when factual information is peculiarly within the defendant's knowledge or control.  <u>See</u> <u>In re Rockefeller Ctr. Props. Sec. Litig.</u>, 311 F.3d at 216 (3d Cir.2002); <u>Craftmatic Sec. Litigation v. Kraftsow</u>, 890 F.2d 628, 645 (3d Cir.1989)). Finally, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

In opposing the Proposed RICO Claim, Defendant contends that Plaintiff fails to plead with requisite factual detail. <u>See</u> Opp. at *16-17. Defendant generally contends that Plaintiff fails to allege facts to show that: (1) there was an established enterprise as defined by statute; (2) the receipt and use of income from a pattern of racketeering activity was used to acquire an interest in the enterprise; (3) the enterprise engages in or affects interstate or foreign commerce; (4) the interstate enterprise was

---

[11] Rule 9(b) does not require that a plaintiff plead the date, place or time of the fraud if plaintiff used an alternative means of injecting precision and some measure of substantiation into the allegations of fraud. <u>Malek v. Chef's Roll, Inc.</u>, No. 218CV03205, 2019 WL 3854303, at *9 (D.N.J. Aug. 16, 2019) (quoting <u>Rolo v. City Investing Co. Liquidating Trust</u>, 155 F.3d 644, 658 (3d Cir. 1998).

engaged in by each individual Proposed Defendant; (5) each individual Proposed Defendant had an intent to defraud; and, (6) whether each individual Proposed Defendant, for purposes of the fraudulent scheme, used the mail system or wire to transmit the representations. Id. at *17. For purposes of Rule 15 the Court accepts the pleadings in the Proposed Amended Complaint as true and finds there is no glaring futility about Plaintiff's Proposed RICO Claim.

First, Plaintiff's enterprise allegations do not render the Proposed RICO Claim futile. "Enterprise" is defined by 18 U.S.C. § 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." For the purposes of Rule 12(b)(6), "it is enough that a plaintiff state what entities it believes constitute an enterprise — a plaintiff does not have to allege the [Turkette] elements to prove that an enterprise actually exits." Darrick Enterprises v. Mitsubishi Motors Corp., No. 05-4359, 2007 WL 2893366, at *7 (D.N.J. Sept. 28, 2007)(citing Seville Indus. Machinery Corp., 742 F.2d at 789-90 (3d Cir. 1984) (reversing district court's dismissal of plaintiff's RICO claim for failure to allege the three elements to prove the existence of an enterprise because "the district court confused what must be pleaded with what must be proved," and holding that the plaintiff sufficiently pleaded the entities it

believed constituted an enterprise)). "So long as a civil RICO plaintiff pleads 'facts indicating that the various associates functioned as a unit,' the plaintiff has satisfied its burden" at this stage. HT of Highlands Ranch, Inc. v. Hollywood Tanning Sys., Inc., 590 F. Supp. 2d 677, 689 (D.N.J. 2008) (quoting In re Ins. Brokerage Antitrust Litigation, MDL Docket No. 1663, 2007 WL 1062980, at *8 (D.N.J. Apr. 5, 2007). Here, Plaintiff's Proposed Amended Complaint is replete with averments of fact demonstrating the relationship between Defendant and Proposed Defendants and each one's distinct role in the alleged enterprise. The Court finds these allegations of an association-in-fact enterprise are sufficient for purposes of Rule 15.

Second, the Proposed Amended Complaint alleges a nexus between racketeering income and the enterprise in support of its claim under 18 U.S.C. § 1962(a). Among other relevant assertions of fact, Plaintiff specifically alleges "Defendants used the proceeds from this scheme to advance the scheme by funding and operating their marketing machine, including through the use of the mails and interstate wires to sell products providing consumers with misrepresentative information . . . thereby growing the enterprise and causing further injury to members of the Class." Proposed Amended Compl. at ¶¶ 137, 138. In light of the liberal pleading standard to which the Court has previously referred, there

36

are sufficient grounds to infer that the requisite use or investment was properly pleaded.

Third and fourth, Plaintiff asserts facts alleging that the enterprise engages in or affects interstate or foreign commerce, and that the interstate enterprise was engaged in by each individual Proposed Defendant. The Proposed Amended Complaint alleges that each engaged or engages in at least one of the following: (a) overseeing shipments of Products to consumers in New Jersey and around the country, relying on the mail to distribute and interstate wires to disseminate the information as well as to receive profits from sales; (b) overseeing the dissemination of alleged fraudulent information to consumers in New Jersey and around the country, relying on the mail to distribute and interstate wires to disseminate the information as well as to receive profits from sales; (c) marketing and advertising the Products from the BR Headquarters in Utah to consumers in New Jersey and around the country, relying on the mail to distribute and interstate wires to disseminate the information as well as to receive profits from sales; (d) selling the Products and servicing consumers in New Jersey and around the country, relying on the mail to distribute and interstate wires to disseminate the information as well as to receive profits from sales; (e) using mail and interstate wires to create and register

additional subsidiaries and affiliates. Proposed Amended Compl. ¶¶ 141-153.

Fifth, Plaintiff alleges that each of the individual Proposed Defendants had the specific intent to participate in the overall RICO enterprise, and that they each had knowledge of and approved the alleged acts of fraud undertaken in furtherance of the goals of enterprise. Proposed Amended Compl. ¶¶ 139, 140, 141-153. Plaintiff further alleges the individual Proposed Defendants share a common purpose or motive, which is to enrich themselves. Id. at ¶ 134. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Sixth, the Court finds that the proposed allegations of mail and wire fraud are set forth with sufficient particularity for the purposes of Rule 15. "To allege mail or wire fraud, plaintiff must describe: 1) the existence of a scheme to defraud, 2) the use of the mails or wires in furtherance of the fraudulent scheme, and 3) culpable participation by the defendants." Emcore Corp., 102 F. Supp. 2d at 245. Here, the Proposed Amended Complaint explains the scheme and contains individual paragraphs specific to Defendant and each Proposed Defendant describing their respective conduct in furtherance of the enterprise. Proposed Amended Compl. ¶¶ 141-153. Plaintiff draws connections between each's role in the enterprise and two predicate acts of racketeering activity, and describes how Proposed Defendants relied on mail and wires to disseminate

advertisements as well as the nature of the representations contained therein. Id. at ¶¶ 163-172.

In sum, for the purposes of this Motion and Rule 15, the Court is unable to conclude that Plaintiff's Proposed RICO claim is clearly futile.

**Conclusion**

For the reasons stated above, Plaintiff's Motion seeking leave to file an amended complaint [Doc. No. 66] is **GRANTED** in part and **DENIED** in part without prejudice.


s/ Matthew J. Skahill
MATTHEW J. SKAHILL
United States Magistrate Judge

At: Camden, New Jersey