[Doc. No. 86]

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

HOLLY DEIBLER, et al.,

                 Plaintiff,

    v.

SANMEDICA INTERNATIONAL, LLC, at al.,

                 Defendants.

Civil No. 19-20155(NLH/MJS)

## M E M O R A N D U M   O P I N I O N   A N D   O R D E R

This matter is before the Court on the motion to compel discovery responses and documents [Doc. No. 86](the "Motion") filed by plaintiff Holly Deibler ("Plaintiff"). The Court is in receipt of the opposition filed by defendant SanMedica International, LLC ("Defendant") [Doc. No. 95] as well as Plaintiff's reply [Doc. No. 99]. The Court exercises its discretion to decide the Motion without oral argument. See FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons set forth herein, Plaintiff's Motion will be **GRANTED** in part and **DENIED** in part.

## I.   Background

This case is familiar to the parties and the Court will not recant its history here beyond what is necessary to resolve the

1

instant Motion.[1] Plaintiff filed this putative class action on November 13, 2019 challenging the efficacy, advertisement, and sale of SeroVital-Hgh ("Serovital"), a purported Human Growth Hormone supplement produced by Defendant. See Complaint [Doc. No. 1]. On October 14, 2020, the parties submitted a proposed joint discovery plan [Doc. No. 36] and on October 21, 2020, Judge Schneider held an initial conference and issued scheduling deadlines [Doc. No. 37]. The schedule contemplated an April 30, 2021 deadline for fact discovery, as to class certification.[2]

On April 12, 2021, the undersigned conducted a status conference with the parties and issued an April 19, 2021 Order [Doc. No. 81], which read in part, "[b]ased on the understanding of all counsel, as represented during the status conference, the current April 30, 2021 discovery deadline refers to the deadline for class certification discovery. See Doc. No. 37. As set forth in further detail during the telephone conference and in this Order, this deadline is adjourned but discovery is not stayed." Id. ¶ 1. The Order further addressed, in part, the underlying disputes which have now manifested themselves in Plaintiff's

---

[1] For a comprehensive discussion of the factual background and procedural history in this matter, see the Opinion, dated October 28, 2021, addressing Plaintiff's motion seeking leave to file an amended complaint. Doc. No. 129.

[2] The Order identifies April 30, 2020 as the deadline. This is an obvious typographical error as the conference occurred on October 21, 2020.

Motion, stating, among other things, that the Court intended to defer addressing certain discovery issues until after the issuance of an Order granting and/or denying Plaintiff's motion to amend the complaint [Doc. No. 66], directing further meet and confer efforts, and granting leave for Plaintiff to file a motion to compel if unresolved issues remained. Id. at ¶¶ 2, 4, 7.[3] As such, this Motion arises in the context of pre-certification discovery and pending appeal of the Court's Order granting Plaintiff's motion for leave to file a first amended complaint, which is currently stayed.

In connection with discovery in this action, on November 4, 2020 Plaintiff served Defendant with interrogatories, amended requests for admission, and document requests, set one, to which Defendant served objections, responses, documents, and ESI on or about January 15, 2021. See Br. in Supp. at *11-12 [Doc. No. 86-1]. The parties then met and conferred to address alleged deficiencies in the responses as required under Loc. R. Civ. P. 37.1; however, the balance of the disputes remained unresolved. Id. at *14-15. Consequently, and as already noted, on April 12,

_____

[3] On October 28, 2021, the Court issued an Order and Opinion granting in part Plaintiff's motion for leave to file an amended complaint. See Doc. Nos. 129, 130. On November 10, 2021, Defendant filed an appeal of this decision. See Doc. No. 131. Thereafter, the Court entered an Order, consented to by both parties, staying enforcement of the October 28, 2021 Order during the pendency of Defendant's appeal. See Doc. No. 140.

2021 the Court granted Plaintiff leave to file the instant Motion if the dispute could not be resolved by April 30, 2021. See Order, April 19, 2021 [Doc. No. 81]. Further meet-and-confer efforts proved unsuccessful[4] and on May 14, 2021 Plaintiff brought this Motion, which seeks the following relief:

1. **All Discovery Responses**:
a. **General & Boilerplate Objections**: Order compelling Defendant to identify any information or documents withheld in response to Plaintiff's first set of ROGs, RFAs, and RFPs, state the factual grounds upon which Defendant's objections are based, or otherwise confirm in writing that no unidentified materials were withheld or search circumscribed, and provide a privilege log for any documents withheld on the basis of privilege. Alternatively, Plaintiff asks this Court to strike unsubstantiated boilerplate objections from Defendant's responses, including the prefatory "General Objections."

2. **Interrogatories**:
a. **Interrogatory No. 2** (Reasons for Changes to Packaging/Labels). Order compelling Defendant to state all reasons for each change made, between November 13, 2013 and present, to SeroVital-hgh's ("Serovital's") packaging/labels regarding: (1) growth hormone, secretagogue, "HGH", and pituitary function; (2) the associated benefits of increased growth hormone, secretagogue, "HGH", and pituitary function; and (3) the product's efficacy being clinically proven, including references to clinical testing, research, or science.

b. **Interrogatory No. 3** (Identification of Each Label & Date in Use): Order compelling Defendant to identify or produce information and/or documents to which Defendant's statement that "Defendant will supplement/amend this response" refers or,

---

[4] Defendant contends that certain matters raised in this Motion very well could have been resolved with further meet and confer efforts, but it appears from the attached email exhibits submitted with the briefing that a breakdown of communications between the parties thwarted those efforts. See Def. Br. in Opp., Declaration of Ronald F. Price, ¶¶ 5-19, Exhibit A [Doc. No. 95-1].

alternatively, striking the ambiguous and evasive statement that suggests the response is incomplete and additional information and documents are forthcoming.

c. **Interrogatory No. 4** (Individuals Responsible for Changes to Packaging/Labels): Order compelling Defendant to identify each individual responsible for: changes to Serovital's packaging/labels that Defendant has not disclosed in response to Interrogatory No. 2, unidentified/unproduced labels in response to Interrogatory No. 3, and to provide the withheld contact information (address, phone number, email address, and last known mailing address), as well as their employment information (last known employer and dates of employment). As an alternative to providing contact information, Plaintiff seeks an order compelling Defendant's counsel of record to accept service of all subpoenas or process in this action on behalf of individuals for whom Defendant has withheld their contact information.

d. **Interrogatory No. 6** (Formulation): Order compelling Defendant to state Serovital's formulation (active and inactive ingredients, by quantity, per dose, and per capsule).

e. **Interrogatory No. 7** (Individuals who Prepared Discovery Responses): Order compelling Defendant to provide the contact information (address, phone number, email address, and last known mailing address) and employment information (last known employer and dates of employment) for each individual who assisted in preparing Defendant's discovery responses. As an alternative to providing contact information, Plaintiff seeks an order compelling Defendant's counsel of record to accept service of all subpoenas or process in this action on behalf of individuals for whom Defendant has withheld their contact information.

f. **Interrogatory No. 9** (Serovital Profits/ Margins/ Costs): Order compelling Defendant to state the net profits, profit margins, and costs, between November 13, 2013 and present, for the sale of Serovital.

g. **Interrogatory No. 10** (Identify Affiliates). Order compelling Defendant to identify (by name, state of incorporation or principal place of business, line of

business, and nature of affiliation) each entity affiliated with Defendant, its parents and grandparents (B.R. Cos., LLC, Basic Research Intermediate, LLC, Basic Research Holdings, LLC), and/or its predecessor and exclusive distributor (Basic Research, LLC) as defined in the interrogatory (which, in sum, includes owners, partners, business venturers, ostensible affiliates, entities engaged in joint financial accounting, and contractors providing marketing, research and development, legal compliance, distribution, sale, or customer service for Serovital).

**3. <u>Amended Requests for Admissions</u>:**
a. **Admissions Requests Nos. 17-56** (Liabilities Exceed Assets). Order compelling Defendant to admit or deny that Defendant's, its parents and grandparents' (Basic Research Intermediate, LLC, Basic Research Holdings, LLC, and B.R. Cos., LLC's) and Defendant's predecessor and exclusive distributor's (Basic Research, LLC's) respective debts/liabilities exceed their respective income/assets for each fiscal year between 2013 and 2020.

**4. <u>Defendant's Document Production</u>:**
a. **Request for Production No. 1** (200-Thousand Page Discrepancy re: Documents Produced in *Pizana*): Order compelling the parties to use the documents produced in the <u>Pizana v. SanMedica International, LLC</u>, USDC for the Eastern District of California Case No. 18-cv-00644-DAD-SKO, filed April 9, 2018 ("<u>Pizana</u>") and further requiring Defendant to identify the bates numbers for each additional non-duplicative document it produced solely in this action.

b. **Requests for Production Nos. 15-16** (Consumer Identifying Information): Order compelling Defendant to produce documents that identify putative class members (New Jersey purchasers of SeroVital-hgh), and documents that relate to how Defendant tracks this information, including documents that can be used to reasonably identify them.

c. **Requests for Production Nos. 25-27** (Corporate Ownership/Governance, Contracts between Affiliates, and Financial Condition): Order compelling Defendant to produce documents regarding Defendant's, its parents and grandparents' (Basic Research Intermediate, LLC, Basic

Research Holdings, LLC, and B.R. Cos., LLC's) and Defendant's predecessor and exclusive distributor's (Basic Research, LLC's) documents regarding their respective corporate ownership structure and governance, contracts with affiliates, and financial condition.

d. **Document Production** (ESI): Order compelling Defendant to: (1) search all relevant electronic databases and drives (including hard drives, network drives, and cloud-based drives) in Defendant's possession, custody, and control for responsive documents and either produce those documents and identify documents withheld from production based on an objection or in a privilege log; and (2) produce directory trees for custodians, drives, and databases that contain any documents or information requested in discovery.

See Notice of Discovery Motion [Doc. No. 86-1].

## II.  **Legal Standard**

Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery regarding "any nonprivileged material that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

It is "well recognized that the federal rules allow broad and liberal discovery." Pacini v. Macy's, 193 F.3d 766, 777-78 (3d Cir. 1999). Relevance is a broader inquiry at the discovery stage than at the trial stage, see Nestle Food Corp. v. Aetna Cos. &

Surety Co., 135 F.R.D. 101, 103 (D.N.J. 1990), and "[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). However, "[a]lthough the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." Bayer AG v. Betachem, Inc., 173 F.3d 188, 191 (3d Cir. 1999).

The precise boundaries of the Rule 26 relevance standard depend upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. See Barnes Found. v. Twp. of Lower Merion, No. CIV. A. 96-372, 1996 WL 653114 (E.D.Pa. Nov.1, 1996); Int'l Paper Co. v. Rexam, Inc., No. CIV.A. 11-6494, 2013 WL 3043638, at *3 (D.N.J. June 17, 2013). When establishing the parameters of discovery relevance, it is the claims and defenses of the parties, in the Complaint and other pleadings, which set the guardrails for discoverable information. Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co., No. CV 14-4318, 2019 WL 1771996, at *3 (D.N.J. Apr. 23, 2019). A court may deny a discovery request if "[a]fter assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues . . . there exists a likelihood that the resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." Salamone v.

8

Carter's Retail, Inc., No. CIV.A. 09-5856, 2011 WL 310701, at *10 (D.N.J. Jan. 28, 2011), aff'd, No. CIV.A. 09-5856, 2011 WL 1458063 (D.N.J. Apr. 14, 2011) (citing Takacs v. Union Cty., No. CIVA 08-711, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009)); see also FED. R. CIV. P. 26(b)(1). "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." Takacs, 2009 WL 3048471, at *3 (D.N.J. Sept. 23, 2009) (citing Bowers v. Nat'l Collegiate Athletic Ass'n, No. CIV. A. 97-2600, 2008 WL 1757929, at *6 (D.N.J. Feb. 27, 2008)).

A party seeking discovery bears the burden to "show that information sought is relevant to the subject matter of the action and may lead to admissible evidence." Carver v. City of Trenton, 192 F.R.D. 154, 159 (D.N.J. 2000). Once that initial burden is met, "the objecting party must demonstrate 'that the requested documents either do not come within the broad scope of relevance defined pursuant to Federal Rule of Civil Procedure 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" Baier v. Princeton Off. Park, L.P., No. 3:08-CV-5296, 2018 WL 5253288, at *4 (D.N.J. Oct. 22, 2018) (quoting Barnes Found., 1996 WL 653114, at *1; see also Cristobal

9

v. Cty. of Middlesex, No. CV164493, 2018 WL 4688337, at *2 (D.N.J. Sept. 28, 2018).

## III. Discussion

The Court will address each topic presented in the Motion, in seriatim.

### a. Privilege Log and Withheld Materials

Plaintiff seeks an Order compelling Defendant to identify any withheld documents and information and provide any necessary privilege log for documents withheld based on boilerplate objections, or, alternatively, striking them from Defendant's responses. See Br. in Supp. at *18 [Doc. No. 95]; Notice of Discovery Motion at *2 [Doc. No. 86]. In its Opposition, Defendant agreed to produce a privilege log. Br. in Opp. at *8. Accordingly, to the extent Defendant has not already done so, Defendant shall furnish a privilege log consistent with Fed. R. Civ. P. 26(b)(5) by no later than January 31, 2022.

As to Plaintiff's broader concern that Defendant may be withholding additional material based on Defendant's "blanket list of objections," the Court simply has no information to suggest that Defendant has failed to comply with its Rule 26 obligations in this regard. Indeed, "[i]t is fundamental to our litigation system that parties rely on each other's good faith and professional responsibilities to comply with the Rules of Civil Procedure." Parker v. Atlantic City Board of Education, Civ. No.

15-8712, 2017 WL 662979, *3 (D.N.J. February 17, 2017) (declining to order the production of a "document" or "relevancy log"). Defendant has certified and signed their interrogatory responses. See Declaration of Katherine A. Bruce ¶ 2, Exhibit 1 (Defendant's Responses to Interrogatories, Set One [Doc. No. 86-3]. There are certain specific instances where Defendant objected and either did not answer or provide documents, which the Court will address in this Opinion. As to the concern that Defendant may be withholding other non-privileged materials, that are otherwise called for by the interrogatories and document production requests and where preserved "boilerplate objections" were lodged, there is a very simple solution. Defendant shall advise Plaintiff by January 31, 2022 if it has curtailed its productions or answers and not provided (or lodged a specific objection) to the relevant non-privileged material that otherwise is called for by the discovery request (i.e. a request asked for ten (10) years of records and Defendant only provided five (5) years of records, held back the other five (5), and offered no indication that it was withholding a subset of non-privileged materials based on a specific relevance objection).[5] Again, there is nothing before the Court to suggest

---

[5]  It is well settled that when objecting to a discovery request, an objecting party must state with specificity the grounds for the objection, and not the familiar litany that the interrogatory or document production request is overly broad, burdensome, oppressive, and irrelevant. See NE Technologies, Inc. v. Evolving Systems, Inc., C.A. No. 06-6061, 2008 WL 4277668, *5 (D.N.J.

this.[6] However, as the Court presumes that all parties have been and are complying with their discovery obligations and the Rules, this dispute can be easily resolved and should likely need no further attention from the Court.

**b.   Interrogatory No. 2 (Reasons for Changes to Packaging/Labels)**

Interrogatory No. 2 asks Defendant to "[s]tate all reasons for each change made, if any, to the content on all versions of the packaging and labels of SeroVital-hgh within the time period of November 13, 2013 through the present." Bruce Decl. ¶ 2, Exhibit 3. Defendant answered as follows:

> Objection. This request is vague and ambiguous. This request calls for information not possessed by Defendant. This request is harassing, overbroad, overly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. There were approximately 48 packaging variations during the relevant period. Specifically addressing the reasons for each change would require many pages of narrative responses. Without waiving these objections, variations in packaging were the result of many factors including capsule count, pricing variations, SKU changes, special packaging sold at specific retailers to distinguish that

---

September 12, 2008); see also Harding v. Dana Transport, Inc., 914 F.Supp. 1084, 1102 (D.N.J. 1996) ("[b]road-based, non-specific objections are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by party making an objection to an interrogatory or document request").

[6] Based on the current briefing and evidence submitted for review, the Court cannot tell either party what it needs to produce or supplement document-by-document, but it does remind both parties of the consequences if it is later found that a party failed to fully answer discovery requests. See OsteoStrong Franchising, LLC v. Richter, No. CV 18-1184 KWR/JFR, 2020 WL 7872786, at *6 (D.N.M. Jan. 30, 2020)

retailer[']s product from the product sold at other
retailers, emphasizing or deemphasizing certain
marketing messages to determine which message may or may
not resonate with specific consumers at certain times,
and testing marketing messages and packaging. At no
time, however, was any change made as the result of a
lawsuit, threatened lawsuit, regulatory challenge, or
other legal or regulatory reason.

Id.

Plaintiff argues that "Defendant's response utterly fails to
provide any reason for the slight variations in changes to the
critical representations at issue in his case[.]" Br. in Supp. at
*23. Defendant, on the other hand, maintains that its response is
satisfactory under the rules of discovery because it "responded
with the information it has about these changes including all of
the different kinds of changes that were made." Br. in Opp. at
*10. Defendant further contends that the changes it identified are
irrelevant to the challenges brought in this lawsuit given that
"at no time . . . was any change made as the result of a lawsuit,
threatened lawsuit, regulatory challenge, or other legal
regulatory reason." Id. at *11.

Because Plaintiff has identified specific labeling changes
showing Defendant varied the language of its core representations
concerning Serovital's anti-aging benefits and efficacy, the Court
finds Plaintiff has supplied a colorable basis for this request.[7]

---

[7] The Court recognizes that in Pizana this same request was denied
"[i]n the absence of any indication that Defendant made any such
changes" in relation to Serovital's efficacy and benefits. Pizana

At the heart of Plaintiff's case is the allegation that Defendant has "affirmatively misrepresented material facts with the intent that consumers rely upon such concealment and deception in connection with the efficacy and advertised benefits of the product." See Compl. ¶ 62 (Count Two: Violation of New Jersey Consumers Fraud Act, N.J.S.A. § 56:8-1, et seq.).[8] Considering that

v. Sanmedica Int'l, LLC, No. 118CV00644, 2020 WL 6075846, at *8 (E.D. Cal. Oct. 15, 2020), reconsideration denied, No. 118CV00644, 2020 WL 6887752 (E.D. Cal. Nov. 24, 2020). This denial was made without prejudice to Plaintiff's right to renew the request should it be learned during class certification discovery that Defendant's answer was incomplete. Id. Here, because Plaintiff has identified specific changes to the language used for core representations at issue in this matter, the Court cannot conclude that the reasons for these changes are entirely or necessarily irrelevant. In fact, based on the precise changes identified by Plaintiff in footnotes 21 and 13 of the brief filed in support of the Motion, the Court finds Plaintiff has satisfied her burden of showing that the reasons for these changes potentially could bear on material issues; for instance, whether the product did or did not ultimately conform to its claims, and whether Defendant knew or should have known of these facts.

[8] Under N.J.S.A. § 56:8-2, "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser."

the modified representations regarding Serovital's antiaging benefits and clinically proven efficacy are central to the issues in this action, Plaintiff is reasonably entitled to know which of the enumerated reason(s) (or other reasons not specifically listed)[9] correspond to those certain identified changes to the label.[10] Provision of this general foundational information is warranted given the imprecise presentation of Defendant's response and to ensure Plaintiff is not needlessly impeded in exploring the relevant subject of whether Defendant's labeling practices were in furtherance of the alleged deception and concealment. Plaintiff's inevitable investigation into the numerous labeling variations and their connection to Defendant's non-exhaustive list of asserted reasons would likely be marred by inefficiency and waste valuable time and resources. That is, Plaintiff may ultimately be able to identify the reasons for changes to key claims and further develop the record by conducting additional discovery (for example, in the form of extensive deposition testimony), but only through unnecessary effort and with lower efficiency and guaranteed delay.

---

[9] Defendant indicated the reasons for the changes are attributable to "many factors including" those six ones specifically identified. This appears to leave open the possibility that the list provided is not exclusive. That said, the Court is not making a judgment that Defendant's list is necessarily incomplete.

[10] As Plaintiff points out, that Defendant did not change the labeling for Serovital due to litigation does not make them irrelevant.

Defendant should therefore, by January 31, 2022, amend its response by correlating the relatively discreet changes identified by Plaintiff, namely labeling changes referring to Serovital's impact on growth hormone, secretagogue, HGH, and pituitary function including the associated benefits; describing Serovital's antiaging benefits; and implying Serovital's clinically proven efficacy (including references to clinical testing, research, or science), to the specific reason(s) asserted.[11] Requiring Defendant to qualify only those changes made to claims specifically relating to the Product's efficacy and benefits appropriately limits the burden to Defendant and gets to the core issues in this case.

**c.   Interrogatory No. 3 (Identification of Each Label & Date in Use)**

Interrogatory No. 3 asks Defendant to "[i]dentify, by listing the bates numbers of all relevant documents, each label iteration and the time period it was in use." Bruce Decl. ¶ 2, Exhibit 1. The parties do not dispute that Defendant responded to this Interrogatory by identifying labels and dates in use. However, Plaintiff takes exception to the way Defendant ended its response by "Defendant will supplement/amend this response." See Br. in Supp. at *22. Plaintiff requests that Defendant amend the response to state that Defendant "reserves its right" to amend or

---

[11] It should be clear that the Court is not judging whether Defendant's list of reasons provided is in any way incomplete.

16

supplement. Id. Otherwise, Plaintiff argues, the list cannot be relied upon as comprehensive. Id. Defendant, on the other hand, contends this statement is necessary and reflects its ongoing discovery obligations given the likelihood of future labeling changes. Br. in Opp. at *8.

Despite its general interposed objections, Defendant does not appear to be resisting discovery on this interrogatory.[12] Rather, as Defendant advises, the list identified "represents the changes as determined from Defendant's records at the time of the discovery requests." Id. at *9. Under FED. R. CIV. P. 33(b), parties responding to interrogatories have a duty to "provide true, explicit, responsive, complete, and candid answers[.]" Hansel v. Shell Oil Corp., 169 F.R.D. 303, 305 (E.D. Pa. 1996). Additionally, FED. R. CIV. P. 26(g)(1) requires that a party or attorney must sign the response, certifying that the "disclosure is complete and correct

---

[12] As already addressed in this Opinion, to the extent Defendant is withholding responsive information on the basis of its generic objections to Interrogatory No. 3 – something that the Court simply has no reason to infer - these objections are inadequate. See Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982) ("[T]he mere statement by a party that the interrogatory was overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to an interrogatory. On the contrary, the party resisting discovery must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.") (internal citation and quotations omitted). However, as Defendant does not appear to have relied on its boilerplate objections, there is no reason for this Court to order them stricken. See Speed RMG Partners, LLC v. Arctic Cat Sales Inc., No. 20-CV-609, 2021 WL 5087362, at *3 (D. Minn. Jan. 5, 2021).

as of the time it is made" to the best of her or his "knowledge, information, and belief formed after a reasonable inquiry." FED. R. CIV. P. 26(g)(1). That Defendant stated it "will supplement/amend" its response, under these circumstances is not an indication that the responses are incomplete or that presently available information is being withheld. And the Court has been presented with no credible reason to question the veracity of Defendant's representation that this language simply reflects its intention to supplement the response in accordance with FED. R. CIV. P. 26(e) considering the likelihood of future labeling changes.[13] [14]

Plaintiff insists that Defendant must state it "reserves its rights" in order for the list to be relied upon as comprehensive. In reality, this is a semantic difference without any practical

---

[13] Rule 26(e) provides that "[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure response . . . in a timely manner if the party learns that . . . the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e)(1)(A).

[14] A greater degree of skepticism might be warranted, however, if Defendant answered indicating all responsive documents will be produced when, in fact, Defendant had no responsive documents in its possession, custody, or control at the time the response was given. See Gipson v. Sw. Bell Tel. Co., No. CIVA 08-2017, 2009 WL 790203, at *20 (D. Kan. Mar. 24, 2009), objections sustained in part and overruled in part, No. 08-2017, 2009 WL 4157948 (D. Kan. Nov. 23, 2009).

weight. A statement that Defendant "reserves the right" to supplement the responses would do nothing more than state the obvious: all parties have a duty to supplement discovery responses "if the party learns that in some material respect the disclosure or response is incomplete or incorrect" or "as ordered by the court." See FED. R. CIV. P. 26(e). Contrary to Plaintiff's apparent contention, a statement that Defendant reserves its right to supplement "does not clarify whether [Defendant] has (or does not have) additional information to completely answer the interrogatory." Zapata v. IBP, Inc., No. CIV. A. 93-2366, 1995 WL 293931, at *1 (D. Kan. May 10, 1995).

Accordingly, the Court declines to order the relief sought in connection with Interrogatory No. 3. There will be continued discovery conferences in this matter and the Plaintiff is free to address this issue then if Plaintiff believes some information is missing.

**d.   Interrogatory No. 4 (Individuals Responsible for Changes to Packaging/Labels) / Interrogatory No. 7**

Interrogatory No. 4 asks Defendant to "[i]dentify (by stating the name, address, phone number, email address, last known mailing address, last known employer, and dates of employment) all individuals responsible for creating or approving the identified changes to the content on the packaging and labels of SeroVital-hgh." Bruce Decl. ¶ 2, Exhibit 1. Defendant answered as follows:

> Objection. This request is vague and ambiguous. Subject
> to and without waving the foregoing: Brian Robles, Gina
> Daines, Stephanie Davis, Mitchell K Friedlander, Jeff
> Wasden, Travis MacKay, John Volturo and Leo Trautwein,
> all of who may be contacted through Defendant's counsel
> of record.

Id. Interrogatory No. 7 requests contact and employment
information (last known employer and dates of employment) for
individuals who assisted in preparing discovery. Defendant
responded as follows:

> Objection. Interrogatory No. 7 is overly broad and
> unduly burdensome. Without waiving this objection,
> substantive work on these responses was provided by
> Steven Garff, Price Parkinson & Kerr, Ronald Price,
> Price Parkinson & Kerr, Jason Kerr, Price Parkinson &
> Kerr, Jim Kreek, on behalf of SanMedica, LLC, Stephanie
> Davis, on behalf of SanMedica, LLC, Amy Heaton, on behalf
> of SanMedica, LLC, Brokk Mowrey, on behalf of SanMedica,
> LLC, and Rick Velasquez on behalf of SanMedica, LLC.

Id.

First, with respect to Interrogatory No. 4 only, Plaintiff
argues that because Defendant's response regarding the
identification of labels and reasons for their changes appear
incomplete, Defendant's response to Interrogatory No. 4 requiring
the identification of individuals responsible for the changes must
be deficient as well. Reply Br. at *2. This form of non sequitur
reasoning assumes that because Defendant failed to correlate the
identified changes to the reasons for the changes in response to
Interrogatory No. 2, it also failed to appropriately identify
witnesses who can attest to the underlying rationale for those

20

changes. Because Plaintiff has offered no non-speculative basis to support this assertion, the Court declines to grant any specific relief in connection with this request at present. That being said, Defendant is reminded of its obligation to supplement its response to Interrogatory No. 4 to the extent it becomes necessary, if at all, and as occasioned by its supplement to Interrogatory No. 2 discussed supra.

Second, for both Interrogatory No. 4 and Interrogatory No. 7, Plaintiff contends that Defendant's responses are deficient for failing to include the identified individuals' contact and employment information. Br. in Supp. at *23-26. Instead of providing the contact information, Defendant directed Plaintiff to contact the individuals through Defendant's counsel of record. See Bruce Decl. ¶ 2, Exhibit 1. The parties appear to have reached a verbal agreement whereby Defendant would amend or supplement its responses to provide the employment information of individuals responsible for label changes in lieu of providing their contact information, and accept service of subpoenas on their behalf in connection with this action. Br. in Supp. at *15; Br. in Opp. at *13; Reply Br. at *5. However, each points the finger at the other for the ensuing failure to execute a signed stipulation. Br. in Opp. at 13; Reply Br. at *5. Because resolution of these issues appeared imminent before the parties became embroiled in this dispute, and given Defendant is not standing on any particular

objection initially raised, the Court will direct the parties to re-initiate meet-and-confer efforts. The Court is confident the parties can jointly prepare a stipulation providing for verified amended responses in exchange for the acceptance of service of subpoenas.[15] This shall be accomplished by January 31, 2022.

**e.   Interrogatory No. 6 (Formulation)**

Interrogatory No. 6 asks Defendant to "[s]tate each formulation of SeroVital-hgh, the time period it was in use, and all reasons for each change made, if any, to the formulation of

---

[15] To the extent the individuals identified in Defendant's response were revealed in its initial disclosures, provision of contact information is warranted under Rule 26(a)(1)(A). "Rule 26(a)(1)(A) is clear. Parties are required to disclose names and contact information" of each individual likely to have discoverable information. F.T.C. v. Dutchman Enterprises, LLC, No. 2:09-CV-141, 2010 WL 3034521, at *3 (D.N.J. Aug. 2, 2010). The Court notes that, insofar as Plaintiff seeks to use Rule 26(a)(1) as the basis to compel disclosure of contact information for individuals not identified in its initial disclosures (and not otherwise identified as persons with knowledge that Defendant may use to support its claims or defenses), Plaintiff's reference to this provision is misplaced. Plaintiff appears to rely on an outdated portion of the 1993 Advisory Committee Notes to Rule 26, which explained that "[a]ll persons with such [discoverable] information should be disclosed, whether or not their testimony will be supportive of the position of the disclosing party." In 2000, the Advisory Committee clarified that "[t]he scope of the disclosure obligation is narrowed to cover only information that the disclosing party may use to support its position." Advisory Committee Notes to Fed. R. Civ. P. 26. Accordingly, "[a] party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use." Id. Therefore, the issue before the Court is not whether the contact and employment information should be disclosed under Fed. R. Civ. P. 26(a)(1)(A)(i), but whether Defendant is obligated to disclose it under Fed. R. Civ. P. 26(b)(1).

SeroVital-hgh made by Defendant since it was first sold." Bruce Decl. ¶ 2, Exhibit 1. Defendant responded by indicating there have been no formulation changes and argues in its Opposition that Plaintiff's demand is moot because the formulation is contained in Defendant's document production at SM00001-004105; SM004081-004105 and is available in public patent documents. Id.

Under FED. R. CIV. P. 33(d), a party is entitled to respond by reference to business records when the burden of answering the interrogatory is substantially the same for the responding and interrogating party. See FED. R. CIV. P. 33(d). Defendant's reference to more than 4,000 pages of documents (SM00001-004105) is therefore inadequate.[16] Though Defendant has made Serovital's active ingredients publicly available, the patents do not explicitly state the quantities of each ingredient. See Reply Br. at *6. Moreover, Defendant has not asserted any specific objections to the Interrogatory, and the Interrogatory is not otherwise facially objectionable in the Court's view. "Objections initially raised but not supported in response to the motion to compel are

---

[16] "The responding party may not avoid answers by imposing on the interrogating party a mass of business records from which the answers cannot be ascertained by a person unfamiliar with them." In re G-I Holdings Inc., 218 F.R.D. 428, 438 (D.N.J. 2003). "Rather, the responding party has a 'duty to specify, by category and location' the records from which he knows the answers to the interrogatories can be found." Id. (quoting R.W. Thomas Const. Management Co., Inc. v. Corrugated Services, Inc., 1995 WL 592539 at *1 (E.D.Pa.1995).

deemed abandoned." In re Bank of Am. Wage & Hour Emp. Pracs. Litig., 275 F.R.D. 534, 538 (D. Kan. 2011).

The Court will therefore grant the relief sought by Plaintiff in connection with Interrogatory No. 6 and Defendant will be ordered to amend its response by January 31, 2022, accordingly.

**f.   Interrogatory Nos. 9-10, Requests for Production Nos. 25-27; Requests for Admission Nos. 17-56 (Affiliates and Defendant's Finances)**

Interrogatory No. 9 seeks the gross revenue, the net profits, the profit margins, and the costs associated with sales of the Serovital from 2013 to present. Bruce Decl. ¶ 2, Exhibit 1. Interrogatory No. 10 asks Defendant to identify each entity affiliated with Defendant. Id. Requests for Production Nos. 25-27 seeks documents that reflect the financial condition and corporate ownership structure of SanMedica and alleged affiliated entities. Id. Requests for Admission Nos. 17-56 ask Defendant to admit or deny that Defendant, its parents and grandparents, and predecessor and exclusive distributor's respective debts/liabilities exceed their respective income/assets for each fiscal year between 2013 - 2020. Id.

To avoid a piecemeal review and scattered production of potentially overlapping financial and corporate structure discovery, the Court will defer ruling on these topics pending the outcome of Defendant's appeal [Doc. No. 131] of the Court's Order [Doc. No. 130] granting Plaintiff's motion for leave to file an

amended complaint [Doc. No. 66]. Plaintiff may renew its application seeking these requested materials once the appeal is decided and after conferring with the Defendant.[17] This arrangement lends itself to a complete and efficient disposition of these issues and will afford a consistent and narrowed record for the parties and the Court to draw from. The interests of efficiency and economy provide good cause to defer ruling on these issues in dispute. Further, because discovery at this stage is focused on that needed for class certification, there will be no unfair prejudice to either party.

### g.   Requests for Production Nos. 15-16 (Customer Identifying Information)

Request for Production No. 15 seeks documents identifying Serovital purchasers in New Jersey from 2013 to present, including contact information. Bruce Decl. ¶ 22, Exhibit 3. Request for Production No. 16 seeks documents regarding how Defendant tracks customer information and how that information can be used to identify them. Id. Defendant refused to provide any documents in response to these requests, objecting that they are "premature as

---

[17]  This is consistent with the Court's April 19, 2021 Directive that prior to the issuance of an order by the Court granting or denying Plaintiff's motion to amend the complaint, the parties' discovery activities shall be limited to discovery concerning matters that are not reasonably implicated by Plaintiff's pending motion to amend. As the entry of the Order granting that motion in part is currently stayed, the parameters of the April 19, 2021 Order remain in place.

no class has been certified and, therefore, harassing overbroad, overly burdensome, not proportional to the needs of this litigation, not relevant to any party's claims or defenses, and not reasonably calculated to lead to the discovery of admissible evidence." Id.

Plaintiff purportedly seeks this information to investigate the materiality of the challenged labeling claims regarding growth hormone and antiaging benefits, determine whether those attributes were important to consumers and motivated their purchase, and to the extent necessary, conduct any consumer surveys. Br. in Supp. at *36-37. In support of this position, Plaintiff cites to the discovery decision in the related action pending in the Eastern District of California, Pizana v. SanMedica Int'l, LLC, No. 118CV00644, 2020 WL 6075846, at *8 (E.D. Cal. Oct. 15, 2020), reconsideration denied, No. 118CV00644, 2020 WL 6887752 (E.D. Cal. Nov. 24, 2020), for the proposition that surveys in consumer protection cases are pertinent to questions of predominance, typicality, and commonality under Rule 23.[18] Reply Br. at *12. Defendant contends, however, that discovery of personal identifying information for putative class members before certification is inappropriate where Plaintiff cannot show how the information will have any bearing on whether Defendant has reliable

---

[18] Defendant concedes numerosity.

26

scientific evidence supporting its representations or whether a class should be certified. Br. in Opp. at *18-19.

Courts have reached different conclusions regarding the extent to which pre-certification discovery of the identify of potential class members is proper. Burkhart-Deal v. Citifinancial, Inc., No. 8-1289, 2009 WL 1750915, at *3 (W.D. Pa. June 19, 2009); compare Artis v. Deere & Co., 276 F.R.D. 348, 352 (N.D. Cal. 2011) ("The disclosure of names, addresses, and telephone numbers is a common practice in the class action context."), and Kane v. Nat'l Action Fin. Servs., Inc., No. CIV.A. 11-11505, 2012 WL 1658643, at *1 (E.D. Mich. May 11, 2012), with Enslin v. Coca-Cola Co., No. 2:14-CV-06476, 2016 WL 7013508, at *2 (E.D. Pa. May 13, 2016) (stating that "[t]he names and addresses of class members are not, per se, within the scope of legitimate discovery")(quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 353-56 (1978)), and McLaughlin on Class Actions § 11:1 (17th ed.) (stating "courts ordinarily will not permit putative class counsel to obtain discovery of class members' identities at the precertification stage"). Notwithstanding these seemingly different approaches, "[t]he most apropos guiding principles to be drawn from the relevant authority are not bright-line rules, but concepts that rest on the basic purposes and underlying rules of civil discovery, and that allow some degree of sensitivity to the facts and the parties before the Court." Burkhart-Deal, 2009 WL 1750915, at *3.

Indeed, as the Supreme Court recognized, "[t]here may be instances where class members' names and addresses could be relevant to issues that arise under Rule 23 . . . . or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues." Oppenheimer Fund, Inc., 437 U.S. at 354 n. 20. Though the Supreme Court cautioned that even those instances likely would not "require compilation of the names and address of all members of a large class." Id. Additionally, the Court observed "[t]here is a distinction in principle between requests for identification of class members that are made to enable a party to send notice and requests that are made for true discovery purposes." Id. Because discovery has been staged in this case [Doc. No. 81, ¶¶ 1, 3] and this action remains in the pre-certification stage, the relevance and proportionality of Plaintiff's request must be viewed through the lens of FED. R. CIV. P. 23.

The Court finds Plaintiff's request is premature as it has not been established that information identifying potential class members is sufficiently relevant and proportional to the needs of the case at the pre-certification stage. As previously addressed, Plaintiff's request purportedly seeks to uncover information about whether and to what extent Defendant's claims regarding growth hormone and antiaging benefits motivated the purchasing decisions of potential class members. Stated differently, Plaintiff wants to

better understand which alleged misrepresentations were "material" under the NJCFA. <u>See</u> N.J.S.A. § 56:8-2.

The principal issue in this action is whether Defendant has competent and reliable scientific evidence to support its key representations (each of which Plaintiff contends are false), or rather if Serovital is no more effective for its advertised purposes than a placebo. As set forth in Plaintiff's Motion, "[t]his entire putative class action claim is based on Serovital's misleading and false labeling and advertising claims regarding growth hormone and antiaging benefits that Defendant uniformly misrepresents on each and every label used during the Class Period." Br. in Supp. at *21. According to Plaintiff,

Every unit of Product sold by Defendants conveys a consistent false and misleading message to consumers—that the Product causes a "682% mean increase in HGH levels," thereby causing "wrinkle reduction, decreased body fat, increased lean muscle mass, stronger bones, improved mood, [and] heightened sex drive" so as to make "users look and feel decades – not years, but DECADES – younger." These representations are also made on Defendants' official website at www.serovital.com. [] Because Defendants represent that the Product will cause a "682% mean increase in HGH levels" and that HGH will provide certain benefits listed on the Product label, consumers reasonably believe that the HGH increase from the Product will cause wrinkle reduction, decrease body fat, increase lean muscle mass, strengthen bones, improve mood, and heighten sex drive such that they will "lookand feel decades – not years, but DECADES – younger" – as claimed on the Product label.

Compl. ¶¶ 19-20.

Viewing the requests against this context and through the lens of Rule 23's certification criteria, the Court finds Plaintiff

has failed to make a requisite showing of relevance and proportionality to merit discovery of customer identifying information at this stage in the litigation. Specifically, Plaintiff has not shown that customer identifying information (or extrinsic evidence in the form of consumer surveys obtained therefrom) is sufficiently relevant to class-certification issues. Plaintiff's proffered basis in relevance – inquiry into the "materiality" prong of N.J.S.A. § 56:8-2 - does not warrant disclosure of customer identifying information at the pre-certification stage in this case where (1) plaintiff has not shown that the meaning of the alleged deception and the uniformity of the exposure are likely to be in dispute;[19] (2) each of the key

---

[19] In Kosta, the court found the alleged misleading statements were unable to be shown on a class-wide basis using common proof where "the variations [we]re so great that at least half the challenged products would not evidence the violations alleged, either because they did not appear on the products or because the [challenged statements] were truthful." Kosta v. Del Monte Foods, Inc., 308 F.R.D. 217, 229 (N.D. Cal. 2015). As a result, the court found that there was "no cohesion among the members because they were exposed to quite disparate information." Id. (quoting Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020 (9th Cir. 2011)). The present case, however, appears more akin to McCormick where the court concluded materiality was a common question for purposes of Rule 23(b)(3) upon finding that the meaning of the allegedly deceptive messaging and the uniformity of exposure were undisputed. In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig., 422 F. Supp. 3d 194, 255 (D.D.C. 2019), leave to appeal denied sub nom. In re McCormick & Co., Inc., No. 19-8003, 2019 WL 7602224 (D.C. Cir. Sept. 20, 2019). Here, Plaintiff alleges a small core of consistent misrepresentations and omissions made on "every unit" sold. Compl. at ¶¶ 19-20; see Stephenson v. Bell Atl. Corp., 177 F.R.D. 279, 291 (D.N.J. 1997) ("To demonstrate the requisite predominance of common issues of fact and law in a (New

Jersey Consumer Fraud Act) case such as this, plaintiffs must identify a small core of misrepresentations and omissions made to all, or most, of the class members."); see also Elias v. Ungar's Food Prod., Inc., 252 F.R.D. 233, 249 (D.N.J. 2008) ("[T]here are allegations that uniform statements regarding fat and calories were made to all customers that were misleading and reasonably could be said to have made a difference in a decision to purchase the product . . . and so it would be appropriate to presume there is a connection between the statements and the purchase of a product different from that which was promised.") (internal citations omitted) (citing Hannan v. Weichert S. Jersey, Inc., No. A-5525-05T5, 2007 WL 1468643, at *13 (N.J. Super. Ct. App. Div. May 22, 2007). If discovery reveals that Defendant varied these small core representations in any consequential respect (i.e. discovery compelled re: Interrogatory #2/labeling changes) that would contradict the Complaint's allegations at ¶¶ 19-20 or call into question the uniformity of exposure to consumers (for instance, if differences in its products' labels cause prospective consumers to understand the representations differently. See Werdebaugh v. Blue Diamond Growers, No. 12-2724, 2014 WL 2191901, at *12-14, 18 (N.D. Cal. May 23, 2014)), then Plaintiff may re-raise the issue at the appropriate time. The same applies in the event Plaintiff can show a likely question or dispute as to any inherent ambiguity of the misrepresentation. See In re 5-Hour Energy Mktg. & Sales Pracs. Litig., No. ML132438, 2017 WL 2559615, at *8 (C.D. Cal. June 7, 2017) (concluding that plaintiffs had not shown that materiality was susceptible to common proof in part because "the meaning of the term 'energy' [was] disputed," and plaintiffs "ha[d] offered no evidence of a common definition of 'energy' among a substantial number of consumers"); Pelayo v. Nestle USA, Inc., No. 13-5213, 2013 WL 5764644, at *4-5 (C.D. Cal. Oct. 25, 2013) (discussing lack of a common understanding of the term "all natural" that is shared by reasonable consumers). Plaintiff has not yet shown any such issues.

representations made about Serovital are alleged to be baseless;[20]

(3) and an objective, reasonable person standard applies.[21]

---

[20] In Lee, the plaintiff sought to certify a class of purchasers of a dietary supplement that the defendant marketed as a weight-reduction product that also lessened anxiety and elevated moods. Lee v. Carter-Reed Co., 203 N.J. 496, 523-24 (2010). The New Jersey Supreme Court held that the plaintiff's NJCFA claim satisfied the predominance requirement because "[w]hen all the representations about the product are baseless, a trier of fact may infer the casual relationship between the unlawful practice – the multiple deceptions – and the ascertainable losses." Id. at 580. In Marcus, the Third Circuit explained that Lee "involved a worthless product for which all representations were baseless" and "[t]here was no reason for the Lee Court to believe that a significant number of class members would, despite knowing that the product was worthless, purchase [it] anyway." Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 612 (3d Cir. 2012). This conclusion simply reflects the common-sense principle that the average consumer generally will not pay something for nothing, which is in accord with Plaintiff's own theory of the case. See Garner v. Healy, 184 F.R.D. 598 (N.D. Ill. 1999), (the district court certified a class of consumers who purchased a substance represented as "car wax" that allegedly contained no wax, finding that "if Plaintiffs paid money for a 'wax,' but instead received a worthless 'non-wax' product, then issues of proximate cause would be relatively simple to resolve on a classwide basis.")

[21] Under the New Jersey Consumer Fraud Act ("NJCFA"), the issue of whether a particular statement on a product's packaging or labeling is false, deceptive, or materially misleading is evaluated according to an objective "average consumer" standard. See Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 69 (1985); see also Eberhart v. LG Elecs. USA, Inc., No. CV 15-1761, 2015 WL 9581752, at *4 (D.N.J. Dec. 30, 2015) ("[I]n an action under the Consumer Fraud Act, the test is whether an advertisement has the capacity to mislead the average consumer.") (internal quotations omitted). Because the question of materiality "is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable [consumer], materiality can be proved through evidence common to the class." Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455, 467 (2013) (internal quotations omitted). "[A] defendant's argument that 'consumers have a variety of reasons for purchasing [a product]' is 'a merits dispute as to materiality,' and is therefore a dispute 'that can be resolved

In short, this is not a case in which the asserted relevant information — i.e., whether the class can prove materiality — portends some apparent dissimilarity among putative members that would require surveys for class-certification purposes. Rather, accepting Plaintiff's theory, this is a situation where there would seem to be no other explanation for the class members' behavior in response to the challenged representations besides their belief that Serovital's ability to increase HGH levels would lead to health benefits.[22]

Accordingly, this case arguably requires less qualitative information from potential class members at the pre-certification stage than might be warranted, for instance, in an employment-related case where questions about whether employees were subject to the same violative practices often loom large.[23] Upon scratching beneath the surface, the asserted nexus between Plaintiff's justification for the

_____

classwide.'" McCormick, 422 F. Supp. 3d at 256. See also Hadley v. Kellogg Sales Co., 324 F. Supp. 3d 1084 (N.D. Cal. 2018).

[22] See Compl. ¶ 20 ("Because Defendants represent that the Product will cause a '682% mean increase in HGH levels' and that HGH will provide certain benefits listed on the Product label, consumers reasonably believe that the HGH increase from the Product will cause wrinkle reduction, decrease body fat, increase lean muscle mass, strengthen bones, improve mood, and heighten sex drive such that they will 'look and feel decades – not years, but DECADES – younger' — as claimed on the Product label.").

[23] Plaintiff's briefing on this issue cites extensively to employment cases. Br. in Supp. at *35-36 fn. 27.

information and the factual circumstances of this case (as reflected in Plaintiff's own allegations and theory of the case) does not warrant production of the information she seeks. See Dziennik v. Sealift, Inc., No. 05-CV-4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006) ("Courts have ordinarily refused to allow discovery of class members' identities at the pre-certification stage out of concern that plaintiffs' attorneys may be seeking such information to identify potential new clients, rather than to establish the appropriateness of certification").

For these reasons, the Court declines to order the relief sought in connection with Requests for Production Nos. 15 and 16. The Court's decision does not, of course, preclude Plaintiff from attempting in the future to demonstrate good cause for such discovery at a potential later stage of this litigation, were the Court to certify the class.

## h.  Request for Production No. 1 (Documents produced in Pizana)

Request for Production No. 1 seeks all documents produced in Pizana. See Bruce Decl. ¶ 24; Exhibit 3. Plaintiff argues that rather than identifying the Pizana documents already in Plaintiff's possession, Defendant reproduced the 500,000 pages in an unorganized fashion in what amounted to a classic "document dump." Br. in Supp. at *38. According to Plaintiff, this purportedly haphazard production was compounded by the vast gap between the number of pages produced in the two cases, which

evinces a deficiency. Comparing the 700,000 pages produced in
Pizana to the 500,000 pages here, Plaintiff contends the exclusion
of California consumer identifying information and sales data
cannot explain the approximately 200,000-page discrepancy. Bruce
Decl. ¶ 6. Moreover, Plaintiff argues that because the documents
were not produced in an organized manner, Plaintiff cannot
otherwise determine the reason for the gap. Id. at ¶ 7. In the
meet and confer sessions, Plaintiff proposed two options to rectify
the dispute: (1) each party must review and compile a list of bates
numbers and compare what Defendant intended to send and what
Plaintiff received; or (2) each party agrees that, because
Defendant intended to simply reproduce an exact copy of the Pizana
production, the parties disregard the Deibler production, use the
Pizana documents as the single set of documents for both cases,
and, to the extent that Defendant produced additional New Jersey
documents not produced in Pizana, it identify those documents by
bates numbers. Id. at ¶ 24. In response, Defendant maintains it
already explained to Plaintiff that the 200,000-page discrepancy
is attributable simply to the omission of California consumer
identifying information and sales data. Br. in Opp. at *28.

FED. R. CIV. P. 34(b)(2)(E) governs the procedure for producing
documents and electronically stored information and provides that,
unless otherwise stipulated or ordered by the court,

> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request; (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and (iii) A party need not produce the same electronically stored information in more than one form.

FED. R. CIV. P. 34(b)(2)(E).

As the Court found in Pizana, the parties appear to have stipulated to a specific procedure for Defendant's production of documents in Pizana, so the procedures set forth by FED. R. CIV. P. 34(b)(2)(E) do not apply in that case. See Pizana, 2020 WL 6075846, at *9. As memorialized in the Pizana meet and confer correspondence from July 17, 2020, Defendant "do[es] not need to segregate the documents by request but will produce documents from the search for 'SeroVital' from the custodians" the parties had previously discussed. Id. As this Court understands, the Defendant produced the documents here (except California consumer information and sales data), the same as it did in Pizana, just as Request for Production, No. 1 called for in this case. Although, for reasons that are unclear, there appears, according to Plaintiff, to be different bates numbering on at least some of the documents – perhaps because new bates numbers were also applied for this case.

In any event, the RFP in question (No.1) reads "All documents produced in the action entitled Pizana v. SanMedica International,

LLC, Case No. 18-cv-00644, Eastern District of California, Hon. Judge Dale A. Drozd." See Doc. No. 86-5. The RFP did not direct Defendant to identify the Pizana documents already in Plaintiff's possession by bates number and, as best the Court can tell, there does not appear to have been any dialogue between the parties prior to the production. This is unfortunate, because perhaps this whole issue could have been avoided.

All that said, the goal of all parties should be to conduct discovery in the most efficient and cost-effective way possible, while remaining faithful to the rules. To that end, the Court declines to direct Defendant to conduct bates number comparisons between documents it produced specifically for Deibler and the documents in Pizana. Moreover, the production has been made months ago and the Court is not going to unwind it now. At the same time, Defendant has represented that approximately 200,000 pages were removed from this production. The Court is not directing the Defendant to reorganize or recategorize the Pizana production. That issue has been addressed in the Eastern of California and needs no further attention from this Court. However, as there are apparently 200,000 less pages in this production, those documents were presumably set aside and all had Bates numbers. Defendant should clarify what the omitted Bates numbers are by no later than January 31, 2022 and then Plaintiff can compare that against that received in Pizana. If the parties have reached an agreement since

the filing of this motion about the use the Pizana documents in this case that obviates this issue, then they should so advise the Court.

i. **ESI Production**

Plaintiff seeks an order compelling Defendant to (1) search all relevant electronic databases and drives (including hard drives, network drives, and cloud-based drives) in Defendant's possession, custody, and control for responsive documents and either produce those documents and identify documents withheld from production based on an objection or in a privilege log; and (2) produce directory trees for custodians, drives, and databases that contain any documents or information requested in discovery. Plaintiff advances two general positions in support of this request.

First, Plaintiff contends that although Defendant has routinely transmitted files by forwarding links to one another and transmitted automated emails from software applications, it appears Defendant has not produced the unspecified documents contained in hyperlinks. Br. in Supp. at *40. Defendant contests Plaintiff's characterization of the designee's testimony and maintains the testimony applied only to the Pizana production. Br. in Opp. at *29. Defendant further challenges this request as seeking irrelevant and disproportional information and points out that Plaintiff refused to provide examples of the hyperlinked

38

emails during the meet and confer sessions, which prematurely broke down as demonstrated in the meet and confer emails between counsel.

Second, Plaintiff claims Defendant improperly failed to conduct searches of ESI stored on network, cloud, hard drives, and databases and applications.[24] Id. at *30. Specifically, Plaintiff believes the searches and, ergo, the production were deficient because Defendant's Rule 30(b)(6) witness indicated he had no knowledge of any searches conducted of databases or drives to produce documents and instead merely relied on what Defendant's counsel told him to say. Id.

On a motion to compel discovery, the party from whom electronically stored information is sought must show that the information is not reasonably accessible because of undue burden or cost. FED. R. CIV. P. 26(b)(2)(B). If such a showing is made, a court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of FED. R. CIV. P. (b)(2)(C). A court may limit discovery of electronic materials under FED. R. CIV. P. 26(b)(2)(C) if: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable

---

[24] Plaintiff indicates "it appears that Defendant uses a Microsoft Office Suite of applications, such as Microsoft Word [], Excel [], Outlook/Exchange [], Teams [], Sharepoint [] as well as various applications and databases that manage sales, customer relations, a product's life cycle, and various other operational functions such as warehousing, order fulfillment, business analytics, and sales performance (Sage 500, Magneto, JIRA, ProClarity, Serenade, Dynamic Microsoft)[.]" Br. in Supp. at *40.

from some other source that is more convenient, less burdensome,
or less expensive; (ii) the party seeking discovery has had ample
opportunity to obtain the information by discovery in the action;
or (iii) the proposed discovery is outside the scope permitted by
Rule 26(b)(1), i.e. the burden or expense of the proposed discovery
outweighs its likely benefit, taking into account the needs of the
case, the amount in controversy, the parties' resources, the
importance of the issues at stake in the litigation, and the
importance of the proposed discovery in resolving the issues. FED.
R. CIV. P. 26(b)(2)(C).

The Court finds no basis to compel a further response to this
request at this moment. As a threshold matter, from the record
before the Court, there appears no indication that the scope of
Defendant's searches/search methodology and/or its failure to
include hyperlinked documents are somehow inconsistent with any
ESI protocol in effect for this litigation. According to the
proposed joint discovery plan filed on the docket in this matter
on October 14, 2020, the parties were to "agree to a set of search
terms and parameters for the production and categorization of
documents and ESI."[25]   Joint FED. R. CIV. P. 26 Report and Proposed

---

[25] See also L. CIV. R. 26.1(d)(2) Duty to Notify. "A party seeking
discovery of computer-based or other digital information shall
notify the opposing party as soon as possible, but no later than
the Fed. R. Civ. P. 26(f) conference, and identify as clearly as
possible the categories of information which may be sought."

Discovery Plan at *12 [Doc. No. 36]. However, based upon its review of the docket and the submissions filed in connection with this Motion, the Court is unable to discern the terms or scope of any such arrangement. And if the parties agreed that ESI discovery activities were to be carried out pursuant to an existing protocol from Pizana, the Court is not privy to any such stipulation.[26] In any event, without the benefit of reviewing the parameters of the ESI protocol, including search terms, and having further basic details, the Court lacks sufficient information to conclude here that Defendant flouted its discovery obligations by its search methodology and/or failure to produce attached hyperlinked documents. Indeed, the Court simply needs more information.

Notwithstanding, based on the information before the Court, it finds the ESI request as presented to be overboard, without some further showing. While a narrower request presented with context surrounding particular hyperlinks, or data platforms, could potentially identify relevant information obtainable without foisting an undue burden upon Defendant, Plaintiff's attempt at a wholesale disclosure of what appears to be all databases, drives, and networks, without more, does not appear, at least on the

---

[26] The Court also questions whether disputes over documents withheld pursuant to an ESI protocol established in Pizana would be more appropriately resolved in the Eastern District of California given the apparent use of the production from that matter in this case.

41

current record, commensurate to the needs of the case, as the Court cannot even determine if some of the material would be duplicative. As to the scope and methodology of Defendant's searches, much of Plaintiff's request appears facially irrelevant now in light of the Court's denial of the request for consumer identifying information, supra. That very well may have served to moot the request to search Serenade, Sage 500, Dynamic Microsoft, and Magneto programs because these programs were/are used to maintain consumer data. See Br. in Opp., Exhibit 5, Decl. of Steven Garff ¶¶ 2-8.

For the foregoing reasons, the Court declines to order the relief sought in connection with Plaintiff's request for ESI discovery. However, the Court intends to promptly convene a telephone status conference to address the ESI protocol in this case, and the relationship to Pizana, and asks the parties to meet and confer on the issue in advance as may be necessary. At that time, the Court will address these ESI discovery issues further if needed.

## IV.  Conclusion

For the reasons set forth herein, it is on this 30th day of December, 2021 hereby ORDERED that Plaintiff's motion to compel discovery responses and documents [Doc. No. 86] is **GRANTED** in part and **DENIED** in part consistent with the foregoing terms of this Memorandum Opinion & Order.

**SO ORDERED.**

s/ Matthew J. Skahill
MATTHEW J. SKAHILL
United States Magistrate Judge

cc:  Hon. Noel L. Hillman